## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

Leslie E. Kline, on her own behalf and on )
behalf of B.A.W. and J.T.W., minors )
under the age of eighteen, )
  )
   and )
  )
Jeffery A. Kline, on his own behalf, )        **AMENDED COMPLAINT**
  )         **(Jury Trial Demanded)**
      Plaintiffs, )
  )
Vs. )
  )        **FILE NO. 1:19-CV-197**
Cleveland County, a Local )
Government Entity, )
  )
Karen Pritchard, Former Director of )
Cleveland County Department of )
Social Services, in her Official and )
Individual Capacities, )
  )
Katie Swanson, Director of Cleveland )
County Department of Social Services, )
in her Official Capacity, )
  )
Tamara Hardin, Cleveland County )
Department of Social Services )
Child Protective Services Social )
Worker Supervisor, in her Official )
and Individual Capacities, )
  )
Pam Bright, Former Cleveland County )
Department of Social Services )
Child Protective Services Social )
Worker Supervisor, in her Official )
and Individual Capacities, )
  )
Nichole Allen, Cleveland County )
Department of Social Services )
Child Protective Services Social )
Worker, in her Official and )
Individual Capacities, )
  )

**Debi Reece, Cleveland County**   )
**Department of Social Services**   )
**Child Protective Services Social**   )
**Worker, in her Official and**   )
**Individual Capacities,**   )
   )
**Christopher Lee, Cleveland County**   )
**Department of Social Services**   )
**Child Protective Services Social**   )
**Worker, in his Official and**   )
**Individual Capacities,**   )
   )
      **and**   )
   )
**Johnny Anderson White, in his**   )
**Individual Capacity.**   )
   )
        **Defendants.**   )
   )

## STATEMENT OF THE CASE

Plaintiffs, Jeffery Kline (hereinafter "Plaintiff Jeffery Kline") and Leslie Kline (hereinafter "Plaintiff Leslie Kline") (collectively hereinafter "Plaintiffs"), by and through Counsel, brings this action on their own behalf, and by Plaintiff Leslie Kline on behalf of the Minor Children as their mother and natural guardian, for injunctive relief and damages against Defendant Cleveland County (hereinafter "Defendant County"), Defendant Karen Pritchard (hereinafter "Defendant Pritchard"), Defendant Katie Swanson (hereinafter "Defendant Swanson"), Defendant Tamara Hardin (hereinafter "Defendant Hardin"), Defendant Pam Bright (hereinafter "Defendant Bright"), Defendant Nichole Allen (hereinafter "Defendant Allen"), Defendant Debi Reece (hereinafter "Defendant Reece"), Defendant Christopher Lee (hereinafter "Defendant Lee"), (collectively hereinafter "DSS Defendants"), and Defendant Johnny White (hereinafter "Defendant White") (collectively hereinafter "Defendants") for violations of their federal constitutional rights protected by the fourteenth amendment pursuant to Title 42 U.S.C. §

1983, violations of their state constitutional rights pursuant to Article I § 19 of the North Carolina Constitution, Negligence, Negligence Per Se, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, Defamation, Abuse of Process, Civil Conspiracy, a Preliminary and Permanent Injunction, and Prejudgment Attachment. For their Complaint, Plaintiffs respectfully state as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs sue, among other causes of action, for violations of 42 U.S.C. § 1983;

2.     Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331;

3.     Venue is proper in the Western District of North Carolina, pursuant to 28 U.S.C. § 1391(b), because the acts and omissions giving rise to the claims in this action all occurred within the County of Cleveland, within the Western District of North Carolina;

4.     In addition, pursuant to 28 U.S.C. § 1367, this Court possesses supplemental jurisdiction over the claims herein that arise under North Carolina law;

## IDENTIFICATION OF THE PARTIES

5.     At all times relevant herein, Plaintiffs were citizens and residents of Cleveland County, North Carolina;

6.     At all times relevant herein, Plaintiffs were citizens of the United States, and all of the Defendants to this claim are persons for purposes of 42 U.S.C. § 1983;

7.     At all times relevant herein, Defendant County was a local government entity within Cleveland County, North Carolina organized and existing under the laws of North Carolina and was acting under color of state law. Defendant County was also the employer of Defendant Pritchard, Defendant Hardin, Defendant Bright, Defendant Allen, Defendant Reece, and Defendant Lee and is a proper entity to be sued under 42 U.S.C. § 1983;

8.      At all times relevant herein, Defendant Pritchard was a citizen of the United States and a resident of the state of North Carolina, and employed by Defendant County as Director of Cleveland County Department of Social Services (hereinafter "DSS") with the responsibility for establishing protective services for juveniles alleged to be abused, neglected, or dependent, the responsibility for providing child protective services to the children of Cleveland County, including the Minor Children, and the responsibility for the hiring, supervision, training, and retention of DSS employees providing services to the Minor Children, including the DSS employees named herein, and was acting under color of state law as Director for the Cleveland County Department of Social Services, and she committed the acts complained of herein her official and individual capacities.  Accordingly, she is sued herein in her official and individual capacities;

9.      At all times relevant herein, Defendant Hardin was a citizen of the United States and a resident of the state of North Carolina, and employed by Defendant County as a Child Protective Services Social Worker Supervisor with the supervisory responsibility for the provision of child protective services to the children of Cleveland County, including the Minor Children, and was acting under color of state law as a Child Protective Services Social Worker Supervisor for Defendant County's Department of Social Services, and she committed the acts complained of herein her official and individual capacities.  Accordingly, she is sued herein in her official and individual capacities;

10.     At all times relevant herein, Defendant Bright was a citizen of the United States and a resident of the state of North Carolina, and employed by Defendant County as a Child Protective Services Social Worker Supervisor with the supervisory responsibility for the provision of child protective services to the children of Cleveland County, including the Minor Children,

and was acting under color of state law as a Child Protective Services Social Worker Supervisor for Defendant County's Department of Social Services, and she committed the acts complained of herein her official and individual capacities. Accordingly, she is sued herein in her official and individual capacities;

11. At all times relevant herein, Defendant Allen was a citizen of the United States and a resident of the state of North Carolina, and employed by Defendant County as a Child Protective Services Social Worker with the responsibility for the provision of child protective services to the children of Cleveland County, including the Minor Children, and was acting under color of state law as a Child Protective Services Social Worker for Defendant County's Department of Social Services, and she committed the acts complained of herein her official and individual capacities. Accordingly, she is sued herein in her official and individual capacities;

12. At all times relevant herein, Defendant Reece was a citizen of the United States and a resident of the state of North Carolina, and employed by Defendant County as a Child Protective Services Social Worker with the responsibility for the provision of child protective services to the children of Cleveland County, including the Minor Children, and was acting under color of state law as a Child Protective Services Social Worker for Defendant County's Department of Social Services, and she committed the acts complained of herein her official and individual capacities. Accordingly, she is sued herein in her official and individual capacities;

13. At all times relevant herein, Defendant Lee was a citizen of the United States and a resident of the state of North Carolina, and employed by Defendant County as a Child Protective Services Social Worker with the responsibility for the provision of child protective services to the children of Cleveland County, including the Minor Children, and was acting under color of state law as a Child Protective Services Social Worker for Defendant County's Department of Social

Services, and he committed the acts complained of herein his official and individual capacities. Accordingly, he is sued herein in his official and individual capacities;

14. At all times relevant herein, Defendant White was a citizen of the United States and a resident of Cleveland County, North Carolina, had a substantial relationship with DSS Defendants such that Defendant White's conduct constituted state action, and he committed the acts complained of herein in his individual capacity and under color of law in conjunction with DSS Defendants; Accordingly, he is considered a person for purposes of 42 U.S.C. § 1983 as a "person acting under color of state law", and he is sued herein in his individual capacity;

15. Defendant Swanson is joined as a necessary party to the action as she is the current Director of the Cleveland County Department of Social Services;

16. The "Minor Children" are identified as Plaintiff Leslie Kline's and Defendant White's two older children, namely B.A.W. and J.T.W., and at the time of the events alleged in this Complaint, were under the age of 18, and remain under the age of 18;

17. DSS is identified as Cleveland County Department of Social Services;

18. DJJ is identified as the Cleveland County Department of Juvenile Justice;

19. At all times relevant herein, the Defendants acted in concert and joint action with each other;

20. Neither sovereign immunity nor governmental immunity bars claims against a local government entity or claims against individuals in their individual or official capacities pursuant to 42 U.S.C. § 1983;

21. Neither sovereign immunity nor governmental immunity bars claims against a local government entity or claims against individuals in their individual or official capacities pursuant to Article I § 19 of the North Carolina Constitution;

22.     Neither sovereign immunity nor governmental immunity bars claims against a local government entity or claims against individuals in their individual and/or official capacities for torts if the entity has purchased liability insurance or participated in a local government risk pool;

23.     Qualified immunity does not bar claims against Defendant Pritchard in her individual capacity pursuant to 42 U.S.C. § 1983 as she violated clearly established law of which a reasonable person would have known;

24.     Public official immunity does not bar claims against Defendant Pritchard in her individual capacity for negligence as she failed to legally use her judgment and discretion with which she was vested in her office as Director of DSS, acted outside the scope of her duties, and acted with malice and/or corruption;

25.     Neither sovereign immunity, governmental immunity, qualified immunity, or public official immunity bar claims for intentional torts against Defendant Pritchard, Defendant Hardin, Defendant Bright, Defendant Reece, Defendant Allen, Defendant Lee, or Defendant White;

26.     To the extent that Defendants may attempt to rely on sovereign immunity or governmental immunity as a bar to one or more of Plaintiffs' causes of action, upon information and belief, Defendants purchased liability insurance or participated in a local government risk pool; accordingly, Defendants waived immunity by the purchase of such insurance or the participation in the local government risk pool;

## FACTUAL ALLEGATIONS

### Family Court Case (06-CDV-1063) Background

27.     On or about February 26, 1999, Plaintiff Leslie Kline and Defendant White were married;

28.     Three children were born of the marriage, namely B.A.W., J.T.W. (the Minor

Children), and A.C.W.;

29.     On or about May 19, 2006, Defendant White filed a Complaint against Plaintiff

Leslie Kline for Divorce from Bed and Board, Temporary and Permanent Custody,

Psychological Evaluation and Sequestration of Marital and Separate Property and Equitable

Distribution, Cleveland County District Court case number 06-CDV-1063[1] (Exhibit 1);

30.     In the Complaint, Defendant White requested emergency and temporary custody

of the Minor Children and falsely alleged, in part, that Plaintiff Leslie Kline failed to tend to the

Minor Children's daily needs, exhibited erratic behavior, and exhibited actions of paranoia;

31.     On or about May 19, 2006, based upon Defendant White's allegations against

Plaintiff Leslie Kline, a Cleveland County District Court Judge granted Defendant White's ex

parte motion for emergency temporary custody and scheduled a temporary hearing for May 30,

2006 (Exhibit 2);

32.     On or about June 6, 2006, Cleveland County District Court Judge Foster entered a

Temporary Order reversing the ex parte Order granting temporary emergency custody to

Defendant White, granted joint temporary legal and physical custody of the Minor Children to

both Plaintiff Leslie Kline and Defendant White, granted Plaintiff Leslie Kline the right to

provide childcare for the Minor Children during Defendant White's assigned custody time while

Defendant White worked, and ordered Defendant White to pay $300.00 per week to Plaintiff

Leslie Kline for support (Exhibit 3);

---

[1] At the time the Complaint was filed, the youngest child A.C.W. had not yet been born.

33.     On or about August 3, 2006, Plaintiff Leslie Kline filed her Answer and Counterclaim[2] to the May 2006 Complaint (Exhibit 4);

34.     On or about August 16, 2006, Plaintiff Leslie Kline filed a Motion to modify child custody in case number 06-CDV-1063 due to the birth of her third child, namely A.C.W., and a substantial change of circumstances regarding one of the Minor Children, B.A.W.;

35.     On or about August 30, 2006, Defendant White filed a Reply to Plaintiff Leslie Kline's Counterclaim;

36.     In or about January 2007, Cleveland County District Court Judge Wilson entered a Temporary Order on Plaintiff Leslie Kline's Motion to modify child custody and to increase support;

37.     Pursuant to the January 2007 Order:

   a.     Defendant White was required to continue paying support in the amount of $300 per week, for a total of approximately $1200 per month, with $914.00 per month classified as child support and $385 per month classified as post-separation support;

   b.     Defendant White was granted visitation time with the newly born child A.C.W.;

38.     In or about May 2007, Cleveland County District Court Judge Foster issued the final Order on Plaintiff Leslie Kline's Motion for Child Custody Modification;

39.     Pursuant to the May 2007 Order:

   a.     The parties were awarded shared joint custody of the children with Plaintiff Leslie Kline being awarded primary physical custody;

---

[2] The Counterclaim included claims for child custody, spousal support, child support, divorce from bed and board, equitable distribution, and attorney's fees.

      b.     Plaintiff Leslie Kline was awarded final decision-making authority upon those matters that the parties could not agree;

40.    In or about February 2008, Defendant White filed a Motion to modify post-separation support;

41.    In or about April 2008, Defendant White filed a Motion to decrease child support;

42.    In or about May 2008, the Department of Social Services issued a show cause order alleging that Defendant White owed $4993.00 in past due support as of April 1, 2008;

43.    In or about July 2008, Plaintiff Leslie Kline filed a contempt motion alleging that Defendant White had not paid his post-separation support since August 24, 2007 and that he was $3980 in arrears;

44.    In or about September 2008[3], Cleveland County District Court Judge Shuford found that:

      a.     Defendant White was in child support arrears in the amount of $6738.00;

      b.     Defendant White was in willful contempt of court for failing to pay child support and post-separation support;

      c.     The amounts Defendant White was ordered to pay, specifically $914.00 per month in child support, and $385.00 per month in post-separation support, remained appropriate (Exhibit 5);

45.    On or about November 3, 2008, Plaintiff Leslie Kline and Defendant White were divorced;

46.    On or about September 9, 2009, pursuant to another motion to decrease child support filed by Defendant White, Cleveland County District Court Judge Wilson decreased

---

[3] The Order was signed on or about March 26, 2009.

Case 1:19-cv-00197-MOC-WCM   Document 17   Filed 08/27/19   Page 10 of 79

Defendant White's child support obligation to $831.00 per month and calculated Defendant

White's child support arrears at $5168.88;

47.     On or about March 20, 2012, pursuant to another motion to decrease child support

filed by Defendant White, Cleveland County District Court Judge Shuford held a hearing but

ruled that Defendant White's child support obligation should increase rather than decrease;

48.     In or about November 2013, Defendant White filed another motion to decrease

child support;

49.     On or about February 18, 2014, Defendant White was, for a second time, found in

willful contempt of court for being in child support arrears in the amount of $30,143.08 (Exhibit

6);

50.     On or about July 4, 2015, Plaintiff Leslie Kline married Plaintiff Jeffery Kline;

51.     Both before and after Plaintiffs' marriage, Plaintiff Jeffery Kline had a strong and

positive relationship with the Minor Children and the youngest child A.C.W.;

52.     On or about July 20, 2016, Defendant White filed a Motion to Modify Child

Custody;

53.     In or about July 2016, Plaintiffs attempted to take the Minor Children to

counseling;

54.     In response to Plaintiffs' attempts to take the Minor Children to counseling,

Defendant White threatened Plaintiff Leslie that if she tried to take the Minor Children to

counseling, he would file for 75% custody;

55.     Subsequently, Plaintiff Leslie Kline filed a Motion requesting a court order

requiring Defendant White to cooperate in taking the Minor Children to counseling[4] (Exhibit 7);

---

[4] This Motion also included Plaintiff Leslie Kline's response to Defendant White's Motion to modify custody.

56.     On or about January 25, 2017, Cleveland County District Court Judge Reeves issued an Order requiring both Plaintiff Leslie Kline and Defendant White to participate in counseling, to take the Minor Children to counseling, to participate in co-parenting counseling, that both Plaintiff Leslie Kline and Defendant White shall ensure the Minor Children are in attendance to all therapy and counseling appointments, and that neither Plaintiff Leslie Kline nor Defendant White shall prevent the Minor Children from attending their therapy appointments (Exhibit 8);

57.     Despite the court order, as of September 2017, Defendant White had not made any attempt to attend co-parenting or any type of counseling with Plaintiff Leslie Kline;

58.     On or about January 14, 2017, Defendant White was scheduled to bring the two Minor Children and the youngest child A.C.W. to Plaintiffs after a visitation;

59.     On or about January 14, 2017, Defendant White brought J.T.W. and A.C.W. back to Plaintiffs, but Defendant White did not bring B.A.W. back to Plaintiffs;

60.     Subsequently, Defendant White filed a motion for custody regarding B.A.W.;

61.     Subsequently, Plaintiffs filed a response to Defendant White's Motion and requested that the Court force Defendant White to return B.A.W. (Exhibit 9);

62.     Due to court scheduling, Plaintiffs were unable to obtain a court hearing until May 2017, at which time the Court ordered that the custody order from May 2007 shall remain in effect, that B.A.W. shall resume therapy, that at no time had B.A.W. disclosed any type of abuse or neglect by Plaintiffs, that if Defendant White chooses to house B.A.W. during Plaintiff Leslie Kline's custodial time, Defendant White will be held in contempt of court and serve an active sentence (Exhibits 10 and 11);

63.     At that time, B.A.W. was returned to Plaintiff Leslie Kline's custody;

64.     Throughout the duration of the domestic case number 06-CVD -1063, Defendant White filed numerous motions to decrease child support;

65.     Throughout the duration of the domestic case number 06-CVD -1063, DJJ case, and DSS case, Defendant White was held in contempt of court multiple times for failure to pay child support and violating court orders;

### Minor Children's Behavioral Changes

66.     Before B.A.W. was ordered to be returned to Plaintiffs, B.A.W. had been in Defendant White's sole custody for approximately 5 months, in violation of previous court orders, without contact with Plaintiffs;

67.     After B.A.W.'s return from being in Defendant White's unlawful custody for approximately five months, B.A.W. began exhibiting behavior problems including but not limited to generally destructive behavior;

68.     J.T.W. began joining B.A.W. in these destructive behaviors;

69.     Specifically, the Minor Children engaged in the following conduct:

    a.      putting ice cube on Plaintiffs' wooden desks;

    b.      punching holes in juice boxes and leaving them in the refrigerator;

    c.      putting ice cubes in Plaintiffs' coffee grounds;

    d.      putting ice cubes in Plaintiffs' sugar bowls;

    e.      turning the freezer to warm temperatures and turning the refrigerator to freezing temperatures;

    f.      leaving water faucets running;

    g.      leaving the home without permission and refusing to tell Plaintiffs where they were going;

h. refusing to go to school;

i. intentionally damaging Plaintiff Leslie Kline's eyeglasses;

j. pouring wet coffee grounds on Plaintiffs' carpet;

k. attempting to bait Plaintiff Jeffery Kline into hitting or slapping him;

70. In or about June 2017, Plaintiff Leslie Kline contacted the Department of Juvenile Justice (DJJ) to obtain information and assistance in dealing with the Minor Children's behavior problems;

71. In or about November 2017, the Cleveland County District Court held a three-day trial on child custody to determine the custodial status of the Minor Children and the youngest child;

72. At the conclusion of the hearing, the Judge ruled, in part, as follows:

a. Defendant White's request for custody modification was denied;

b. Plaintiff Leslie Kline's request for modification was granted;

c. Both Defendant White and Plaintiff Leslie Kline shall participate in co-parenting counseling;

d. The parties shall contact Dr. Margaret Lee to schedule the co-parenting counseling;

e. Primary physical custody awarded to Plaintiff Leslie Kline;

f. Secondary physical custody awarded to Defendant White, specifically, every other weekend and two non-consecutive weeks during the summer;

g. The parties would share joint legal custody;

h. One of Defendant White's motivations for seeking primary custody of the Minor Children is so he will not have to pay child support;

i.      That B.A.W. has completely changed since living with Defendant White and returning to Plaintiffs' home as a result of the previous hearing that kept the previous order in place;

j.      B.A.W. is now openly defiant;

k.      J.T.W. is now following the lead of his older brother, B.A.W.;

l.      B.A.W. has continued to be disrespectful and has failed to follow the rules at Plaintiffs' home;

m.      That Defendant White fails to properly co-parent;

n.      That Plaintiffs parent and discipline appropriately;

o.      That Plaintiffs use discipline appropriately;

p.      That Defendant White "has taken a course of action specifically aimed at undermining the Defendant Mother's authority and to harm her relationship with the children";

q.      Defendant White is in willful contempt and shall serve an indefinite period of incarceration, but the incarceration shall be suspended allowing time for Defendant White to purge his incarceration period by paying $4000.00 into Plaintiff Leslie Kline's attorney's trust account within 60 days[5] (Exhibit 12);

73.      After the November 2017 custody trial, the Minor Children's behavioral problems worsened;

74.      Due to the Minor Children's worsening behavior, Plaintiff Leslie Kline again reached out to DJJ to obtain some assistance with the Minor Children's behavioral problems;

---

[5] The written order was signed July 11, 2018.

75.     Plaintiff Leslie Kline called DJJ on May 24, 2018, May 25, 2018, May 30, 2018, and May 31, 2018;

76.     Plaintiff Leslie Kline was advised by DJJ that DJJ would not be able to assist her unless she filed a petition for delinquency on the Minor Children;

77.     On May 31, 2018, Plaintiff Leslie Kline again contacted DJJ and scheduled an appointment for June 5, 2018, the first available appointment;

## June 1, 2018 Incident

78.     On or about June 1, 2018, while Plaintiff Jeffery Kline was napping on the sofa inside Plaintiffs' residence, B.A.W. intentionally woke Plaintiff Jeffery Kline up and intentionally dumped coffee grounds on the carpet in front of Plaintiff Jeffery Kline;

79.     After B.A.W. dumped coffee grounds on the carpet in front of Plaintiff Jeffery Kline, B.A.W. attempted to bait Plaintiff Jeffery Kline into slapping him;

80.     Plaintiff Jeffery Kline refused to slap B.A.W.;

81.     To avoid any further family disturbance and any unfounded reports, Plaintiffs then called the Cleveland County Sheriff's Department;

82.     Shortly thereafter, law enforcement arrived at Plaintiffs' residence, and no charges were filed;

## June 4, 2018 – Child Abuse/Neglect Allegations

83.     On or about June 4, 2018, at approximately 4:30 pm, B.A.W. left Plaintiffs' home without Plaintiffs' permission;

84.    Plaintiff Leslie Kline saw B.A.W. walk out of the house and assumed that B.A.W. was either calling Defendant White or going down the street to see a friend[6];

85.    B.A.W. did not return home within a reasonable time;

86.    Later that night, at approximately 9:00 pm, Plaintiffs called police and reported that B.A.W. had not returned home and remained missing;

87.    Upon information and belief, law enforcement located B.A.W. at the Cleveland Mall Chick-Fil-A and attempted to bring him back to Plaintiffs' residence;

88.    Upon information and belief, at that time, and for the first time, B.A.W. made allegations that Plaintiff Jeffery Kline had hit him;

89.    Upon information and belief, in response to the allegation against Plaintiff Jeffery Kline, law enforcement contacted the Cleveland County Department of Social Services;

90.    Upon receiving the call from police, DSS Defendants opened a child abuse and neglect investigation on Plaintiffs;

91.    Defendant Allen, the night shift child protective services caseworker on duty, then went to Plaintiffs' residence and interviewed several individuals including Plaintiffs;

92.    Plaintiffs made Defendant Allen aware of the Minor Children's behavioral history;

93.    While Defendant Allen was present at the Plaintiffs' residence, she also spoke privately and separately with J.T.W. and A.C.W.;

94.    While at Plaintiffs' home the evening of June 4, 2018, Defendant Allen completed and signed a Safety Assessment (Exhibit 13);

95.    The Safety Assessment lists several current safety indicators;

---

[6] Plaintiffs later discovered that B.A.W. had left Plaintiffs' home to attend graduation and to visit with friends;

96.     The safety indicators are defined as behaviors or conditions that describe a child being in imminent danger of serious harm;

97.     The instructions on the form advise the social worker to "Assess the above household for each of the safety indicators. Mark "yes" for any and all safety indicators present in the family's current situation and mark "no" for any and all of the safety indicators absent from the family's current situation based on the information at the time. Mark all that apply."

98.     The first safety indicator reads "Caretaker caused and/or allowed serious physical harm to the child or made a plausible threat to cause serious physical harm in the current assessment as indicated by:" followed by a list of potential conditions including:

    a.     Serious injury or abuse to the child other than accidental

    b.     Caretaker fears he/she will maltreat the child

    c.     Threat to cause harm or retaliate against the child

    d.     Substantial or unreasonable use of physical force

    e.     Drug-exposed infant/child

    f.     Caretaker committed act that placed child at risk of significant/serious pain that could result in impairment or loss of bodily function

    g.     Caretaker intended to hurt child and does not show remorse

    h.     Death of a child;

99.     Defendant Allen checked box "yes" as to the first safety indicator;

100.    However, Defendant Allen did not check any of the specific safety indictors listed below the first safety indicator, as outlined in paragraph 148 a-h;

101.    In the comments, Defendant Allen wrote, "Allegations that children have been slapped in the face and shoved against the wall";

102.    The sixth safety indicator reads "Caretaker does not meet the child's immediate needs for food or clothing" with several safety indictor choices listed below including:

   a.    No food provided or available to the child, or child is starved/deprived of food/drink for long periods;

   b.    Child appears malnourished;

   c.    Child is without minimally warm clothing in cold months;

103.    Defendant Allen checked box "yes" as to the sixth safety indicator;

104.    However, Defendant Allen did not check any of the specific safety indictors listed below the sixth safety indicator, as listed in paragraph 152 a-c;

105.    In the comments, Defendant Allen wrote, "disclosure that food is withheld from the children";

106.    The June 4, 2018 Safety Assessment is not signed by Plaintiffs;

107.    On the evening of June 4, 2018, neither law enforcement nor Defendants observed any physical sign of injury or abuse on the Minor Children or the youngest child;

108.    On the evening of June 4, 2018, neither law enforcement nor Defendants found that the Plaintiffs' home was lacking in food supply or any evidence that Plaintiffs' were withholding food from the Minor Children or the youngest child;

109.    That evening, DSS Defendants did not remove B.A.W. from Plaintiffs' home;

110.    Defendant Allen asked Plaintiffs to consent to letting B.A.W. stay the night at Defendant White's house;

111.    While Plaintiffs did not consent to allowing B.A.W. to spend the night with Defendant White, B.A.W. ultimately spent the night with Defendant White;

112.    That evening, DSS did not remove J.T.W. or A.C.W. from Plaintiffs' home;

## June 5, 2018 – Bathtub Incident

113. On or about June 5, 2018, Defendant Reece was assigned as the investigating caseworker for Plaintiffs' case;

114. Upon information and belief, on or about June 5, 2018, Defendant Reece received a call from law enforcement wherein she was advised that B.A.W. was on his way to Cleveland Memorial Hospital after an incident involving a bathtub full of water and B.A.W.'s statement that he was thinking about taking his life;

115. Prior to this incident occurring, Plaintiffs and Defendant White had agreed that they would meet on June 5, 2018 at noon to return B.A.W. to Plaintiffs;

116. On the morning of June 5, 2018 Plaintiffs went to their appointment with DJJ and began completing the paperwork to file a petition for delinquency on the Minor Children;

117. At approximately 11:00 am on June 5, 2018, Plaintiff Leslie Kline was notified by law enforcement that B.A.W. was on his way to Cleveland Memorial Hospital;

118. Plaintiff Leslie Kline was informed that B.A.W. had attempted to take his own life by drowning himself in a bathtub at Defendant White's residence;

119. Defendants characterized the bathtub incident as a "suicide attempt" by B.A.W.;

120. On or about February 18, 2019, Defendant White stated under oath that he opened the bathroom door and saw B.A.W. completely submerged in the bathtub water with his head under the water;

121. However, although B.A.W. ran bath water, B.A.W. admitted that he never got in the bathtub, had only considered taking his own life, and had not made any suicide attempts prior to the police knocking on the bathroom door;

122. There is a swimming pool located at Defendant White's residence;

123.    There is a river near Defendant White's back yard;

124.    On or about June 5, 2018, both DJJ case worker Shawn Collins and Defendant Reece arrived at the hospital;

125.    Defendant Reece conversed with B.A.W. at the hospital during which B.A.W. admitted to Defendant Reece that he had only considered taking his life but had not made any attempt at taking his life when the police knocked on the bathroom door;

126.    B.A.W. also admitted at the hospital that he was not really depressed but only angry about having to live with Plaintiff Leslie Kline;

127.    On or about June 5, 2018, while at the hospital, Myra Willis, Defendant White's cousin, informed Plaintiff Leslie Kline that B.A.W. had sent a text message to his friends indicating that he was going to take his own life;

128.    Myra Willis asked Plaintiff Leslie Kline to allow J.T.W.to stay at her house so he would not be alone if he found out about B.A.W.'s text message;

129.    Out of concern for J.T.W. and his reaction to news of his brother B.A.W., Plaintiff Leslie Kline agreed to allow J.T.W. to stay at Myra Willis' residence for the night;

### Subsequent Events

130.    On or about June 7, 2018, Defendant Reece advised Plaintiff Leslie Kline that, if she did not allow B.A.W. to be placed with Myra Willis, DSS would remove all three children from Plaintiffs' custody;

131.    In response to Defendant Reece's statement, Plaintiff Leslie Kline acquiesced to B.A.W. being released to Myra Willis;

132.    On or about June 7, 2018, Plaintiff Leslie Kline filed her Summons and Petitions for Delinquency on the Minor Children with DJJ (Exhibits 14a, 14b, 15a, and 15b);

133.    On or about June 7, 2018, during the DJJ hearing, the Minor Children admitted to leaving Plaintiffs' home without their permission, to being disrespectful to Plaintiffs, to behaving in an undisciplined manner, and to being regularly disobedient (Exhibits 14c and 15c);

134.    Defendant Reece was present at the June 7, 2018 DJJ hearing during which the Minor Children made these admissions;

135.    Additionally, at the hearing, Cleveland County District Court Judge Reeves ordered that A.C.W. needed to remain uninvolved in the case and that the Minor Children were to be placed in the custody of DJJ;

136.    Pursuant to Judge Reeves' Order, the Minor Children were placed in foster care;

137.    Upon information and belief, after the Minor Children were placed in foster care, Defendant Lee replaced Defendant Reece as the caseworker on Plaintiffs' case;

## DSS Defendants' Failure to Investigate Fairly and Respond Appropriately

–   *Opening the Investigation*

138.    The North Carolina Juvenile Code, N.C.G.S. § 7B-101(15), defines "neglected juvenile" as "any juvenile less than 18 years of age (i) who is found to be a minor victim of human trafficking under G.S. 14-43.15 or (ii) whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or the custody of whom has been unlawfully transferred under G.S. 14-321.2; or who has been placed for care or adoption in violation of law";

139.    The North Carolina Juvenile Code, N.C.G.S. § 7B-101(1), defines "abused juvenile", in part, as "any juvenile less than 18 years of age . . . (ii) whose parent, guardian,

custodian, or caretaker inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means; creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means; . . . creates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others; or encourages, directs, or approves of delinquent acts involving moral turpitude committed by the juvenile";

140.    While DSS has a duty to initiate a prompt investigation upon receiving a report of child abuse or neglect, not all reports of suspected child abuse or neglect are sufficient to trigger DSS' obligation and authority to conduct an investigation;

141.    Upon receiving a report of child abuse or neglect, DSS has a duty to screen reports to determine whether an investigation is warranted;

142.    Under the circumstances, B.A.W.'s allegation was not sufficient to trigger DSS' authority to conduct an investigation;

143.    Even if B.A.W.'s allegation did trigger DSS' obligation and authority to make an initial inquiry, upon DSS' determination that there was no sign of injury to the children, DSS lacked further authority to continue its investigation;

144.    Upon information and belief, DSS Defendants did not make any report to the district attorney or law enforcement that they believed there was evidence to support child abuse and/or neglect;

145.    Government intervention was not necessary to protect the welfare of the Minor Children or the youngest child;

146. There were no facts to support any belief that Plaintiffs were not appropriately protecting and disciplining B.A.W., J.T.W., and A.C.W.;

– *DSS' Defendants Refusal to Consider Relevant and Necessary Information*

147. During DSS Defendants' investigation, Plaintiffs made DSS Defendants aware of several items of evidence contradicting the child abuse allegations and asked DSS Defendants to review this information;

148. Specifically, Plaintiffs advised DSS Defendants that they were in possession of an audio recording wherein J.T.W. told Plaintiffs that J.T.W. and B.A.W. would continue to engage in destructive behavior until they got what they wanted (living with their father despite the Court having determined that was not in the Minor Children's best interests);

149. Specifically, Plaintiffs advised DSS Defendants that they were in possession of an audio recording wherein B.A.W. acknowledges that Plaintiffs do not even spank the Minor Children and B.A.W. suggesting that maybe Plaintiffs should have done so;

150. Specifically, Plaintiffs advised DSS Defendants that they were in possession of an audio recording wherein B.A.W. attempts to bait Plaintiff Jeffery Kline into hitting him and then proceeds to state that if he did get a spanking, it would qualify as sexual abuse for hitting him on the bottom;

151. Defendant Reece stated that she refused to listen to these recordings because she was concentrating on the June 5, 2018 suicide attempt;

152. Specifically, Plaintiffs advised DSS Defendants that, in the summer of 2017, the Minor Children had been attending counseling sessions with John Adriatico with Support Incorporated and offered DSS Defendants the Minor Children's counseling records which contained the Minor Children's following admissions:

a.      that the Minor Children had never suffered physical or sexual abuse;

b.      that the Minor Children never felt unloved or unwanted and in fact felt loved and supported;

c.      that the Minor Children often defied adults' rules;

d.      that the Minor Children occasionally lied to get out of trouble or to avoid obligations;

e.      with regard to J.T.W., that no adult in the household made him feel afraid or that he would be physically hurt;

f.      that no adult in the Minor Children's household pushed, grabbed, or slapped them;

g.      that the Minor Children always had enough to eat;

h.      that Plaintiff Leslie Kline does not let them do what they want;

i.      that the Minor Children were routinely defiant and disrespectful to Plaintiff Leslie Kline;

153.    DSS Defendants refused to review or to consider the Support Incorporated records and information;

   – *Evidence Contrary to Finding*

154.    At the time B.A.W. made the initial allegation against Plaintiff Jeffery Kline, B.A.W. was routinely disobedient, of which DSS Defendants were aware;

155.    At the time B.A.W. made the initial allegation against Plaintiff Jeffery Kline, B.A.W. was going through an intense custody battle, of which DSS Defendants were aware;

156. At the time B.A.W. made the initial allegation against Plaintiff Jeffery Kline, B.A.W. was a teenager who had left home without permission, who was hanging out with his friends and not wanting to return home, of which DSS Defendants were aware;

157. The initial allegation made by B.A.W. against Plaintiff Jeffery Kline was a result of Plaintiffs' call to police out of concern for B.A.W.'s safety, of which DSS Defendants were aware;

158. At no time did Defendants observe any visible injuries to either of the Minor Children or the youngest child A.C.W.;

159. At no time did DSS Defendants formally take custody of the Minor Children or youngest child A.C.W. away from Plaintiffs;

160. Rather, as a result of the DJJ case that was initiated by Plaintiffs, the Court placed the Minor Children in foster care, through DSS, pending the resolution of the DJJ matter;

161. At no time did DSS Defendants receive any report of suspected child abuse or neglect from anyone other than the Minor Children, defiant teenagers who the Court recognized as having a propensity to lie and who were going through an intense custody battle;

162. DSS Defendants were aware that the Minor Children, on June 7, 2018, admitted to leaving Plaintiffs' home without permission, to being disrespectful to Plaintiffs, to behaving in an undisciplined manner, and to being regularly disobedient;

163. DSS Defendants were aware that the Minor Children have a propensity to lie;

164. DSS Defendants were aware that a Cleveland County District Court Judge had found in an Order that the Minor Children have a propensity to lie;

165. DSS Defendants were aware that Defendant White was enabling the Minor Children to lie;

166. DSS Defendants were aware that a Cleveland County District Court Judge had found in an Order that Defendant White was enabling the Minor Children to lie;

167. DSS Defendants were aware, by B.A.W.'s own admission, that he had not attempted suicide but had only considered suicide;

168. DSS Defendants were aware that, on or about May 2017 (order filed August 2017), child B.A.W. told the Cleveland County District Court Judge Reeves in Chambers that Plaintiffs were good to him but that he simply wanted to live with his father;

– ***DSS Defendants' Failure to Comply with Court Orders and Interference with Plaintiffs' Constitutional Rights***

169. Plaintiff Leslie Kline had a court ordered right to visitation with the Minor Children while the Minor Children were in foster care (Exhibit 16);

170. DSS Defendants never provided Plaintiffs with information about the foster mother, to include her identity or contact information;

171. Plaintiff Leslie Kline communicated on multiple occasions to Defendant Lee her desire to visit with the Minor Children;

172. Rather than complying with the Court Order authorizing and requiring visitation, Defendant Lee made no attempt to assist Plaintiff Leslie Kline and responded that the Minor Children did not wish to see Plaintiff Leslie Kline;

173. Despite DSS Defendants never providing Plaintiff Leslie Kline with the foster mother's contact information or attempting to help Plaintiff Leslie Kline obtain her visitation, Defendant White received the foster mother's contact information and was regularly able to visit with the Minor Children;

174.    In addition to Defendant White being able to visit with the Minor Children, the foster mother routinely took the Minor Children to a restaurant owned by Defendant White to eat meals;

175.    The foster mother would not only take the Minor Children to Defendant White's restaurant, but she would also take her entire family, including other foster children, to eat meals at Defendant White's restaurant;

176.    The foster mother was never required to pay for any meals, including her own meals and meals for other foster children, at Defendant White's restaurant;

177.    The foster mother's routine dining at Defendant White's restaurant resulted in Defendant White receiving additional visitation time that exceeded the visitation provided in the Court Order;

178.    DSS Defendants not only knew about the foster mother taking the Minor Children to dine at Defendant White's restaurant but approved the foster mother doing so;

179.    Subsequently, in or about September 2018, when the Minor Children were removed from foster care and placed with Myra Willis, DSS Defendants continued to refuse to assist Plaintiff Leslie Kline in obtaining her court ordered visitation;

– ***DSS Defendants' Conflicts of Interest and Defendant White's Involvement with DSS***

180.    Upon information and belief, DSS Defendants allowed DSS employees, specifically Defendant Bright and Defendant Lee, to continue working on Plaintiffs' case despite their prior friendly relationship with Defendant White and Defendant White's relatives;

181.    Upon information and belief, prior to DSS Defendants' investigation of Plaintiffs and during DSS Defendants' investigation of Plaintiffs, Defendant White maintained a social relationship with several Cleveland County DSS employees;

182.    Upon information and belief, prior to DSS Defendants' investigation of Plaintiffs and during DSS Defendants' investigation of Plaintiffs, Defendant White and Defendant Bright associated socially and were friendly acquaintances and/or friends;

183.    Upon information and belief, prior to DSS Defendants' investigation of Plaintiffs and during DSS Defendants' investigation of Plaintiffs, Defendant Lee and Bill Willis, Myra Willis' husband and Defendant White's relative, associated socially and were friendly acquaintances and/or friends;

184.    On or about June 14, 2018, at a children and family team (CFT) meeting, while Defendant Bright was actively involved in Plaintiffs' case, Defendant Bright communicated with Myra Willis, Defendant White's cousin, about subject matter having nothing to do with Plaintiffs' case;

185.    On or about June 14, 2018, at a CFT meeting, while Defendant Lee was actively involved in Plaintiffs' case, Defendant Lee communicated with Bill Willis, Myra Willis' husband and Defendant White's relative, about subject matter having nothing to do with Plaintiffs' case;

186.    Even though Defendant Hardin was Defendant Reece's supervisor, Defendant Bright, rather than Defendant Hardin, signed the case decision substantiating Plaintiffs;

187.    During the June 14, 2018 CFT meeting, Defendant White made disparaging comments about Plaintiff Leslie Kline in the Minor Children's presence and in DSS Defendants' presence;

188.    DSS Defendants did not stop Defendant White or attempt to stop Defendant White from making these statements about Plaintiff Leslie Kline in front of the Minor Children;

189.    At the June 14, 2018 CFT meeting, DSS Defendants referred Plaintiffs, Defendant White, and Defendant White's wife to Inner Healing for parenting counseling;

190.    At that time, Amia Briscoe with Inner Healing was appointed by the Court to provide counseling to the youngest child A.C.W.;

191.    While all parties (Plaintiffs, Defendant White, and his wife) were all court ordered to participate in co-parenting counseling, the CFT form completed by DSS Defendants states that only Plaintiff Leslie Kline was required to participate in co-parenting counseling (Exhibit 17);

192.    Rather than a direct Inner Healing counselor or Amia Briscoe conducting the parenting counseling, Yolanda Hall-Asbell, an independent contractor with Inner Healing, conducted the parenting counseling;

193.    Without Plaintiffs' consent or knowledge, Defendant White specifically chose Yolanda Hall-Asbell as the parenting counselor;

194.    DSS Defendants allowed Defendant White to independently choose Yolanda Hall-Asbell;

195.    Defendants did not disclose to Plaintiffs that Defendant White had independently chosen Yolanda Hall-Asbell;

196.    Upon information and belief; Yolanda Hall-Asbell did not routinely work with DSS;

197.    During Amia Briscoe's counseling of A.C.W., Defendant White would regularly call Amia Briscoe voicing concerns;

198.    During Amia Briscoe's counseling of A.C.W., Amia Briscoe received an anonymous letter including negative information about Plaintiff Leslie Kline;

199. On or about July 18, 2018, only days prior to the case decision letter being mailed to Plaintiffs, Defendant Reece received an email from Defendant White;

## DSS Defendants' Case Decision

200. Defendant Reece has been employed with DSS since September 2015;

201. During Defendant Reece's employment with DSS, she has been the assigned investigating caseworker on well over one hundred cases;

202. Defendant Reece's decision as to Plaintiffs' DSS case was that there was no substantiation that she could make as to any abuse, neglect, or dependency on Plaintiffs' part;

203. Defendant communicated her opinion to her supervisor, Defendant Hardin;

204. Notwithstanding Defendant Reece's recommendation, DSS Defendants decided to substantiate Plaintiffs for child abuse and/or child neglect;

205. Prior to this case, Defendant Reece's recommendations had always been followed; Plaintiffs' case is the first of Defendant Reece's cases in which her decision has been overruled;

206. Sometime between June 5, 2018 and July 24, 2018, DSS Defendants made the decision to substantiate Plaintiffs for child abuse and/or child neglect, deeming Plaintiffs perpetrators of emotional abuse and improper discipline;

207. Sometime between June 5, 2018 and July 24, 2018, DSS Defendants wrote a letter to Plaintiffs advising the Plaintiffs that DSS Defendants had completed their investigative assessment involving the children, that Plaintiffs' case would be closed as "substantiated for neglect" and that the decision was "due to [the] children, J.T.W. and B.A.W. being placed in [DSS'] custody through the DJJ case with Judge Reeves" (Exhibit 18);

208.    The case decision letter is dated June 13, 2018 but was not mailed by DSS Defendants until the end of July 2018 (Exhibit 19);

209.    The letter was received by Plaintiffs in the mail on or about July 25, 2018;

210.    The letter dated June 13, 2018 is signed by Defendant Reece and Defendant Bright for Defendant Hardin;

211.    The June 13, 2018 North Carolina Case Decision Summary/Initial Case Plan states that the case is "substantiated" as to the children B.A.W. and J.T.W., lists the maltreatment findings as "emotional abuse" and "improper discipline", and identifies the perpetrators as "Leslie Kline" and "Jeffery Kline", the Plaintiffs (Exhibit 20);

212.    The Case Decision Summary states that there are current safety issues that indicate the children are likely to be in immediate danger of serious harm, that there are significant assessed risk factors that are likely to result in serious harm to the children in the foreseeable future, and that the child is in need of CPS In-Home or Out-of-Home Services because the caretaker's protective capacity is insufficient to provide adequate protection;

213.    The June 13, 2018 Case Decision Summary is electronically signed by Defendant Reece and Defendant Bright;

214.    Notwithstanding the case decision letter being dated June 13, 2018, the Case Decision Summary lists the investigation dates as June 9, 2018 through June 28, 2018;

215.    Defendant Reece has stated that the investigation began on June 4, 2018 and concluded on June 14, 2018;

216.    Defendant Reece has stated that her personal investigation began on June 5, 2018 and concluded on June 7, 2018;

217. On July 3, 2018, before the case decision letter was mailed, Defendant Reece arrived at Plaintiffs' home to inform them of the case decision substantiating the Plaintiffs for child abuse and/or child neglect;

218. During this visit, Defendant Reece stated that there was "no evidence" of child abuse or neglect;

219. During this visit, Defendant Reece stated that "there are politics involved";

220. During this visit, Defendant Reece stated that, despite their being no evidence to support the allegations, Defendants had to believe the allegations of the Minor Children;

221. On or about August 24, 2018, Plaintiff Leslie Kline wrote a letter to Defendant Pritchard requesting review of the DSS Defendants' decision (Exhibit 21);

222. On or about September 10, 2018, Defendant Pritchard wrote a responsive letter to Plaintiffs stating, "Although there is no statutory procedure for the 'appeal' of a DSS case decision, I have reviewed this matter and I support the case decision made in this matter." (Exhibit 22);

223. The basis for the substantiation against Plaintiffs, as described in DSS documents and in DSS statements, is inconsistent;

224. The dates of the investigation, as described in DSS documents and DSS statements, are inconsistent;

225. The date of the case decision, as described in DSS documents, is inconsistent;

## Judicial Review of DJJ Case

226. A Judicial Review hearing for the DJJ case was scheduled to be heard on or about September 19, 2018;

227.	The night before the Judicial Review hearing, Judge Reeves was notified that J.T.W. had threatened to take his own life if he was forced to go to Plaintiffs' residence on September 19th;

228.	At the September 19, 2018 hearing, Judge Reeves ordered the following:

a.	The Minor Children would be placed in the home of Myra Willis;

b.	Plaintiff Leslie Kline and Defendant White shall each have four hours of unsupervised visitation with the Minor Children each week and unlimited supervised visitation;

c.	The Minor Children cannot refuse visitation (Exhibit 23);

229.	During this hearing, DSS closed its case and terminated its involvement with Plaintiffs and the Minor Children;

230.	From June 4, 2018 through September 19, 2018, DSS was intimately involved in Plaintiffs' family affairs and repeatedly interfered with Plaintiffs' rights to make decisions concerning the care, custody, and control of the Minor Children;

**Minor Children Abscond**

231.	Another Judicial Review hearing was held on or about December 6, 2018 before Cleveland County District Judge Shuford;

232.	At this hearing, DJJ closed its case, thereby vacating the Order placing the Minor Children in the home of Myra Willis;

233.	The Court ordered that the Minor Children shall be returned to Plaintiffs;

234.	After the hearing, the Minor Children left the courthouse;

235.	Plaintiffs called law enforcement to report the Minor Children missing;

236.	Law enforcement located the Minor Children at the residence of Myra Willis;

237.   The police officer did not remove the Minor Children from Myra Willis' home;

238.   On or about December 7, 2018, Plaintiff Leslie Kline picked the Minor Children up from school and, because the Minor Children were making threats of self-harm if their wishes were not honored, took the Minor Children to CaroMont Health Center in Gaston County, North Carolina;

239.   The Minor Children were admitted to CaroMont Health Center for psychiatric treatment;

240.   The Minor Children remained in the custody of CaroMont Health Center in Gaston County for several days until their release;

241.   On or about December 11, 2018, B.A.W. was released from CaroMont Health Center and sent to Old Vineyard Behavioral Health in Winston-Salem, North Carolina;

242.   On or about December 14, 2018, J.T.W. was released from CaroMont Health Center;

243.   Upon J.T.W.'s release, J.T.W. went to counseling and then went to Defendant White's residence for Defendant White's visitation;

244.   J.T.W. was scheduled to return to Plaintiffs' residence on or about December 16, 2018;

245.   On or about December 16, 2018, Defendant White met Plaintiff Leslie Kline at Myra Willis' house to return J.T.W. and A.C.W.[7];

246.   At this time, J.T.W. refused to get out of Defendant White's car to go home with Plaintiff Leslie Kline;

---

[7] B.A.W. remained in the custody of Old Vineyard at this time.

247. Plaintiff Leslie Kline requested Defendant White to bring J.T.W. to her house, but Defendant White refused;

248. The following day, on or about December 17, 2018, Defendant White took J.T.W. to another counseling appointment;

249. Plaintiff Leslie Kline met Defendant White at the counseling appointment to take J.T.W. home; however, while Plaintiff Leslie Kline's back was turned, Defendant White left the appointment with J.TW.;

250. J.T.W. never showed up at school after the appointment;

251. B.A.W. was scheduled to be released from Old Vineyard on December 18, 2018;

252. On or about December 17, 2018, Plaintiff Leslie Kline spoke with Old Vineyard and confirmed that they would give her several hours' notice before dropping B.A.W. off the following day;

253. On or about December 18, 2018, Plaintiff Jeffery Kline picked up A.C.W. from school to take him to an appointment;

254. Because neither Plaintiff Leslie Kline nor Plaintiff Jeffery Kline were available to pick J.T.W. up from school on the afternoon of December 18, 2018, Plaintiff Leslie Kline called the school and advised the school personnel to put J.T.W. on the bus to get home that afternoon;

255. While Plaintiff Jeffery Kline was picking up A.C.W. from school, he saw J.T.W. walking down a road away from the school;

256. Plaintiff Jeffery Kline lost sight of J.T.W. and notified the school;

257. The school thereafter notified the police;

258. Plaintiff Leslie Kline received information from Plaintiff Jeffery Kline that people were searching for J.T.W.;

259.   After Plaintiff Leslie Kline's conversation with Plaintiff Jeffery Kline, she left her home to begin searching for J.T.W.;

260.   While searching for J.T.W., Plaintiff Leslie Kline received information that B.A.W. had been dropped off and was at a neighbor's house;

261.   Thereafter, Plaintiff Leslie Kline called Old Vineyard, received information that B.A.W. had been released to police at 12:30 pm on December 18, 2018, and received information that B.A.W. had stated he had a key to get inside the home;

262.   Thereafter, Plaintiff Leslie Kline called the police;

263.   Before Plaintiff Leslie Kline could get to the neighbor's house to pick B.A.W. up, B.A.W. left for walk and never returned;

264.   On or about January 3, 2019, DSS Defendants obtained an Order for Secure Custody based upon the Minor Children having absconded;

265.   On or about January 23, 2019, Defendant White informed DSS Defendants that there was an "underground network" taking care of the Minor Children;

## Defendant White's Motion to Modify Custody and Final Custody Hearing and Order

266.   On or about December 20, 2018, as a result of the DSS Defendants' substantiation against Plaintiffs, Defendant White filed a motion for an emergency child custody protective order and a motion to modify child custody due to a substantial change of circumstances as to the Minor Children and the youngest child A.C.W.;

267.   The substantial change of circumstances listed by Defendant White in his Motion includes:

   a.   The minor children B.A.W. and J.T.W. are presently exposed to a substantial risk of bodily injury if an emergency order is not entered suspending the

requirement that B.A.W. and J.T.W. remain in the primary physical custody of the Defendant;

     b.     That on June 4, 2018, B.A.W. left his mother's home and refused to return based upon allegations of physical and emotional abuse by the Plaintiffs (Exhibit 24);

268.     On or about January 11, 2019, Plaintiff Leslie Kline filed her Response to Defendant White's Motion (Exhibit 25);

269.     Cleveland County District Court Judge Reeves denied Defendant White's request for emergency custody;

270.     The final hearing/trial on Defendant White's Motion for Custody Modification began on February 18, 2019 before Cleveland County District Court Judge Sanderson;

271.     As of February 20, 2019, the Minor Children had not appeared in Court;

272.     At that time, Judge Sanderson ordered that the Minor Children must attend the hearing, or he would not be inclined to alter the prior Order placing the Minor Children with Plaintiff Leslie Kline;

273.     The following day, the Minor Children came to court;

274.     Sometime between December 18, 2018 and February 20, 2019, Defendant White had contact or communication with one or both of the Minor Children;

275.     Defendant White did not tell Plaintiffs or DSS Defendants about the Minor Children's contact with him;

276.     Defendant White did not tell law enforcement, DJJ, or Shawn Collins about the Minor Children's contact with him;

277. During the hearing, Plaintiffs learned that Defendant White had heard from the Minor Children approximately two weeks prior, but Defendant White had not informed Plaintiffs or DSS Defendants of his contact with the Minor Children;

278. During the hearing, Judge Sanderson chastised Defendant White for his conduct toward Plaintiff Leslie Kline;

279. During the hearing, Judge Sanderson stated that Defendant White's conduct towards Plaintiff Leslie Kline was "cruel";

280. Judge Sanderson ordered as follows:

    a.    There was no substantial change of circumstances with regard to A.C.W.;

    b.    There were substantial changes of circumstances with regard to the Minor Children, specifically, the Minor Children absconding and the alleged suicide attempts;

    c.    Both Plaintiff Leslie Kline and Defendant White are fit and proper persons to provide care, custody, and support for all the children;

    d.    Defendant White is awarded primary custody of the Minor Children;

    e.    Plaintiff Leslie Kline is awarded visitation for the first three weekends of every month;

    f.    That, if Defendant White did not bring the Minor Children to Plaintiff Leslie Kline for the transfer on time, he would be held in contempt of court;

    g.    That Plaintiff Leslie Kline is awarded one telephone call per night with both of the Minor Children;

    h.    That Defendant White must make a telephone available for the phone calls, and if he fails to do so, he will be held in contempt of court;

i.      That Defendant White provide Plaintiff Leslie Kline all passwords to the Minor Children's computers, phones, and apps by the following Monday, and if he fails to do so, he will be held in contempt of court;

j.      That Defendant White must notify Plaintiff Leslie Kline of all doctor appointments for the Minor Children, and if he fails to do so, he will be held in contempt of court;

k.      That Defendant White must notify Plaintiff Leslie Kline of all school events for the Minor Children, and if he fails to do so, he will be held in contempt of court;

l.      That Defendant White must notify Plaintiff Leslie Kline of anything noteworthy occurring in the Minor Children's lives, and if he fails to do so, he will be held in contempt of court;

m.      That Plaintiff Leslie Kline is a good mother;

n.      That there is no abuse in Plaintiffs' home;

o.      That the court does not believe the Minor Children;

p.      That the Minor Children have chosen to be defiant and are dishonoring Plaintiff Leslie Kline in her own house;

q.      Because the Minor Children refuse to honor Plaintiff Leslie Kline, the court is forced to choose Defendant White;

r.      Specifically, the Minor Children's allegations "were and are disingenuous and were a ploy by [B.A.W.] and [J.T.W.] to attempt to get the order changed so they could live with father; no evidence supports those allegations. There is

no merit to [B.A.W.'s] and [J.T.W.'s] claims regarding any type of abuse as alleged against their mother and/or Jeff Kline."

     s.     Specifically, Plaintiff Leslie Kline "has done all she can for [B.A.W.] and [J.T.W.] to try to foster a healthy relationship with them but through no fault of her own, as a result of their continued defiance, she has lost control of [B.A.W.] and [J.T.W.] . . . ; she has been a good mother and is not the cause of what has happened with the boys over the last year . . . ."  (Exhibit 26);

### Additional Relevant Conduct by Defendant White

– *Grievances and Complaints*

281.     In or about July 2009, Plaintiff Leslie Kline was represented by Attorney Les Farfour;

282.     In or about July 2009, Defendant White sent a letter to Les Farfour's law partner, Robert Lutz, accusing their law firm, Yelton Farfour McCartney Lutz & Craig, of an ethical violation, stating that Defendant White had filed a complaint with the North Carolina State Bar;

283.     In or about July 2009, Defendant White filed a complaint against Les Farfour with the North Carolina State Bar;

284.     This Bar dismissed this complaint;

285.     Despite the Bar dismissing the complaint, Les Farfour nonetheless resigned from representing Plaintiff Leslie Kline;

286.     In or about 2010/2011, Defendant White reported Plaintiffs' attorney Nichole Greene to the North Carolina State Bar, thereby attempting to force Ms. Greene's withdrawal as Plaintiffs' attorney;

287.     The Bar also dismissed this complaint;

288.    Again, in or about October 2018, Defendant White reported Plaintiffs' attorney Nichole Greene to the North Carolina State Bar a second time, thereby attempting to force Ms. Greene's withdrawal as Plaintiffs'' attorney;

289.    The Bar also dismissed this complaint;

290.    Upon information and belief, in or about October 2018, Defendant White filed a grievance against Judge Reeves with the North Carolina Judicial Standards Commission;

291.    Upon information and belief, the Commission has either dismissed this complaint or has not completed its investigation;

292.    Defendant White's conduct was an attempt to interfere with Plaintiff Leslie Kline's legal success and impede her ability to be adequately legally represented;

293.    Defendant White's conduct was an attempt to force any attorneys representing Plaintiff Leslie Kline or Plaintiff Jeffery Kline to withdraw;

294.    Defendant White's conduct was an attempt to prevent the courts from making fair and unbiased rulings;

– ***Protesting and Disclosure of DSS Case Information***

295.    On or about November 14, 2018, Defendant White protested outside the Cleveland County Courthouse accompanied by other unidentified protesters holding signs stating, "DSS substantiates neglect Judge Reeves doesn't care" and "Judge Reeves destroys relationships (family's)" (sic);

296.    On or about November 14, 2018, while Defendant White was protesting, Defendant White voluntarily spoke with a reporter from the Shelby Star about the case;

297.    The following day, photos of Defendant White and the other unidentified protesters with the signs were published on the cover of the Shelby Star above an article written by Joyce Orlando (Exhibits 27a, 27b, 27c, and 27d);

– *Additional Defamatory Statements*

298.    In or about December 2018, Defendant White made disparaging and untrue statements about Plaintiffs to an unidentified individual at CaroMont Health Center to include the following:

      a.      Plaintiff Leslie Kline has obsessive compulsive disorder;

      b.      Plaintiff Leslie Kline has borderline personality disorder;

      c.      Lincoln County DSS has had an open case on Plaintiff Leslie Kline for neglect;

      d.      Lincoln County DSS has had an open case on Plaintiff Jeffery Kline for abuse;

## Gaston County DSS Investigation

299.    Upon information and belief, in or about December 2018, while the Minor Children were at CaroMont Health Center in Gaston County, DSS received another report concerning the Minor Children and alleging child neglect/abuse by Plaintiffs;

300.    Upon information and belief, DSS conflicted this new report out to Gaston County Department of Social Services;

301.    While the investigation was pending, Gaston County DSS received numerous anonymous letters and emails regarding the case;

302.    Upon information and belief, these letters and emails were sent by Defendant White;

303.     In or about February 2019, Gaston County DSS unsubstantiated the new case against Plaintiffs (Exhibit 28);

**<u>Plaintiffs' Damages</u>**

304.     Defendants' acts and omissions have actually and proximately caused damage to Plaintiffs and to the Minor Children as follows:

305.     DSS Defendants communicated and/or caused to be communicated to several third parties that Plaintiffs were substantiated for child abuse and/or child neglect;

306.     DSS Defendants had foreseeable knowledge that their substantiation against Plaintiffs and the false statements that Plaintiffs committed child abuse or child neglect or that there was evidence that Plaintiffs committed child abuse or child neglect or that Plaintiffs were perpetrators of emotional abuse and improper discipline would be further communicated to additional third parties;

307.     DSS Defendants provided the case decision summary to Tennika Dennard and Ashtin Biochea;

308.     Tennika Dennard in turn communicated to CaroMont Health personnel that Plaintiffs had been substantiated for child abuse or child neglect by DSS;

309.     As a result, counselors, therapists, and medical professionals have believed that Plaintiffs abused or neglected the Minor Children;

310.     As a result, counselors, therapists, and medical professionals have refused to speak with Plaintiff Leslie Kline about the Minor Children's counseling;

311.     As a result, Plaintiff Leslie Kline was denied the opportunity to see B.A.W. in the emergency room;

312.     Because the counselors, therapists, and medical professionals have not listened to Plaintiffs and have not considered Plaintiffs trustworthy and respectable caretakers, the Minor Children have been prevented from getting the counseling treatment they need to assist them with their emotional issues;

313.     Due to emotional distress, Plaintiff Jeffery Kline's physical ailments, including without limitation his rheumatoid arthritis, have worsened such that he is in constant pain and is having difficulty walking;

314.     Due to emotional distress, Plaintiff Leslie Kline's physical ailments, including without limitation her fibromyalgia, have worsened;

315.     Plaintiffs' reputations have been severely damaged;

316.     Plaintiffs have been deprived of their constitutional rights;

317.     Plaintiffs have experienced emotional pain and suffering;

318.     Plaintiffs have suffered financial damage due to additional legal fees, medical expenses, lost wages, among other financial damage in an amount of at least $90,000.00;

319.     Plaintiffs' relationships with the Minor Children have deteriorated to the point of potentially being beyond repair;

320.     The Minor Children's relationships with their younger brother A.C.W. have deteriorated;

## FIRST CAUSE OF ACTION
**(Violation of Substantive and Procedural Due Process Pursuant to the Fourteenth Amendment to the United States Constitution – 42 U.S.C. § 1983)**
**(As to all Defendants)**

321.     Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

322. The Fourteenth Amendment to the Constitution of the United States provides in part, "No State shall . . . deprive any person of life, liberty, or property without due process of law";

323. The Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, companionship, and control of their children;

324. The Fourteenth Amendment also protects the fundamental right of individuals to use their faculties to adopt, foster, and care for children, to earn a livelihood in the childcare field, and to pursue a career in the childcare profession;

325. Plaintiff Leslie Kline has a fundamental right to make decisions concerning the care, custody, companionship, and control of the Minor Children that could not be deprived without due process;

326. Plaintiffs have fundamental rights to use their faculties to adopt, foster, and care for children, to earn a livelihood in the childcare field, and to pursue a career in the childcare profession that could not be deprived without due process;

327. Defendants issued a case decision substantiating Plaintiffs for child abuse and/or neglect without any evidence and without any lawful basis;

328. Defendants formally deemed Plaintiffs perpetrators of emotional abuse and improper discipline against the Minor Children without any evidence and without any lawful basis;

329. Plaintiffs' opportunities to adopt and foster children have been infringed as the applications for adoptive and foster parents require information about child abuse and/or child neglect history;

330. Defendants unlawfully interfered with Plaintiff Leslie Kline's visitation rights as they failed and refused to comply with court orders awarding Plaintiff Leslie Kline visitation;

331. Defendants failed and refused to avoid conflicts of interests in investigating the allegations against Plaintiffs;

332. Between June 4, 2018 and September 19, 2018, as a result of DSS Defendants' investigation and decision to substantiate Plaintiffs, DSS Defendants substantially involved themselves in Plaintiffs' family affairs, thereby depriving Plaintiffs of their rights to make decisions concerning the care, custody, companionship, and control of the Minor Children;

333. Specifically, Defendants involved itself in Plaintiffs' family affairs as follows:

    a. Defendants took an authoritative position over Plaintiffs' family affairs and their relationship with the Minor Children for several months;

    b. Defendants enacted a treatment plan that Plaintiffs were required to follow;

    c. Defendants referred Plaintiffs to certain therapists and counselors;

    d. Defendants managed Plaintiffs' court-ordered co-parenting counseling;

    e. Defendant Allen came to Plaintiffs' home the evening of June 4, 2018, stayed for several hours, and interviewed family members;

    f. On or about June 5, 2018, Defendant Reece came to the hospital after B.A.W.'s bathtub incident;

    g. DSS called Plaintiff Leslie Kline's parents to speak with the youngest child A.C.W. while he was at camp;

    h. On or about June 11, 2018, Defendant Reece came to Plaintiffs' home to speak with the youngest child A.C.W. after he returned from camp;

i.     On or about June 18, 2018, DSS Defendants switched J.T.W.'s counselor and required Plaintiff Leslie Kline to complete paperwork and submit to psychological tests but did not require the same from Defendant White;

j.     On or about June 19, 2018, DSS Defendants switched B.A.W.'s counselor and required Plaintiff Leslie Kline to complete paperwork and submit to psychological tests but did not require the same from Defendant White

k.     On or about June 29, 2018, Defendant Reece contacted Plaintiffs to make an appointment to come by their home;

l.     On or about July 3, 2018, Defendant Reece came to Plaintiffs' home and stayed for several hours;

m.     Plaintiffs and DSS had a multitude of telephone conversations discussing this matter;

334.   There is no adequate justification for Defendants' deprivation of Plaintiffs' constitutional rights;

335.   The North Carolina Juvenile Code provides procedures that must be followed before a deprivation of this right may occur;

336.   Pursuant to N.C.G.S. § 7B-302(a), Defendants, upon receipt of a report of suspected child abuse or neglect, have a legal obligation to conduct a prompt, fair, and thorough investigation;

337.   N.C.G.S. § 70B-101(11)(b) defines "Investigative assessment response" as "A response to reports of child abuse and selected reports of child neglect and dependency as determined by the Director using a formal information gathering process to determine whether a juvenile is abused, neglected, or dependent";

338.     Pursuant to Title 10A North Carolina Administrative Code Chapter 70A § .0106, entitled "Conducting an Investigation," Defendants, in conducting a prompt, fair, and thorough investigation, must consider all available relevant evidence when additional information is necessary;

339.     Specifically, Title 10A North Carolina Administrative Code Chapter 70A § .0106, entitled "Conducting an Investigation," requires that the Director obtain and utilize additional sources in an investigation when additional information is necessary, including "(1) Professionals or staff at an out-of-home care setting having relevant knowledge pertaining to the alleged abuse, neglect, or dependency; (2) Other persons living in the household or attending or residing in the out-of-home care setting; (3) Any other source having relevant knowledge pertaining to the alleged abuse, neglect, or dependency; and (4) Records; i.e., school, medical, mental health, or incident reports in an out-of-home care setting."

340.     Plaintiffs made DSS Defendants aware of available relevant evidence contradicting the allegations against Plaintiffs, including without limitation, the following:

  a.     Audio recording wherein J.T.W. told Plaintiffs that Plaintiffs could get the Minor Children to stop their undisciplined behavior by giving them what they want (living with their father despite the Court having determined that was not in the Minor Children's best interests);

  b.     Audio recording wherein B.A.W. acknowledges that Plaintiffs do not even spank the Minor Children and B.A.W. suggesting that maybe Plaintiffs should have done so;

c.      Audio recording wherein B.A.W. attempts to bait Plaintiff Jeffery Kline into hitting him and then proceeds to state that if he did get a spanking, it would qualify as sexual abuse for hitting him on the bottom;

d.      District court case number 06-CDV-1063 file history which included court findings from District Court Judges that the Minor Children have a history of lying;

e.      District court case number 06-CDV-1063 file history which included court findings from District Court Judges that Plaintiffs parent appropriately, use discipline appropriately, that Defendant White acts to undermine Plaintiff Leslie Kline and to harm Plaintiff Leslie Kline's relationship with the Minor Children, that the Minor Children are defiant and disrespectful;

f.      The Minor Children's Support Incorporated records which contained the Minor Children's admissions that they had not been victims of abuse or neglect;

341.    Defendants intentionally declined to review the above information and all information provided by Plaintiffs;

342.    Defendants substantiated Plaintiffs for child abuse and/or child neglect and deemed Plaintiffs perpetrators of emotional abuse and improper discipline without following proper procedure, specifically, failing to conduct a thorough assessment, failing to gather information, ignoring additional, available, relevant, and necessary information, despite Plaintiffs' request that they review this information and attempting to make this information available;

343.    Thus, Defendants failed to treat Plaintiffs fairly and denied Plaintiffs the opportunity to be heard;

344.     Additionally, after DSS Defendants made a determination that Plaintiffs committed emotional abuse, and thereby committed child abuse as it is statutorily defined, DSS Defendants were statutorily required to take further steps to provide Plaintiffs an opportunity to have the DSS decision reviewed;

345.     Specifically, the North Carolina Juvenile Code requires DSS, after finding that an individual has abused or seriously neglected a child, to report this information to the North Carolina Department of Health and Human Services for the individual's name to be added to the Responsible Individuals List;

346.     However, before an individual's name can be added to the Responsible Individual's List, DSS Defendants must provide notice of this fact to the individual and provide them information on their right to judicial review and the procedure for requesting judicial review;

347.     Specifically, upon DSS Defendants making the determination that Plaintiffs committed emotional abuse, DSS Defendants are statutorily required to notify Plaintiffs of the finding as well as providing Plaintiffs with additional information to include a statement that the individual has been identified as a responsible individual, a statement summarizing the substantial evidence supporting the director's determination, a statement informing the individual that unless the individual petitions for judicial review, the individual's name will be placed on the responsible individuals list, a clear description of the actions the individual must take to seek judicial review of the director's determination, and a copy of a petition for judicial review form;

348.     While DSS Defendants mailed a letter informing Plaintiffs of their case decision, the letter did not include any information about Plaintiffs being identified as Responsible

Individuals, any information about any substantial evidence on which their decision was based, or any information regarding their opportunity or procedure for judicial review;

349.     Despite DSS Defendants finding that Plaintiffs committed emotional abuse and thereby committed child abuse, DSS Defendants did not comply with statutory requirements to contact NCDHHS to add Plaintiffs' names to the Responsible Individuals List which would have provided Plaintiffs the opportunity for judicial review of DSS Defendants'' decision;

350.     Defendants' actions in failing to comply with statutory procedures precluded any opportunity for review of Defendants' substantiation decision;

351.     Alternatively, if DSS Defendants were not statutorily required to notify the NCDHHS for purposes of placing Plaintiffs' names on the Responsible Individuals List, thereby negating any requirement for DSS to provide notice of judicial review, Plaintiffs nonetheless remained without an opportunity for review because when DSS declines to file a petition, the court remains uninvolved and Plaintiffs would not have had the opportunity for review;

352.     Defendants exceeded their statutory authority to substantiate Plaintiffs without following proper procedure and without any supporting evidence;

353.     Defendant Pritchard, as Director of DSS, had final policy making authority for DSS and therefore, her actions in either directing or approving of her employees' conduct represent an official policy of DSS;

354.     All Defendants to this claim, at all times relevant hereto, were acting under the color of state law as Cleveland County, Cleveland County Department of Social Services, Director of Cleveland County Department of Social Services, Cleveland County Child Protective Services Social Worker Supervisors, and Cleveland County Child Protective Services Social Workers, and

their acts or omissions were conducted both within the scope of their official duties or employment and also outside the scope of their official duties or employment;

355.    DSS Defendants were in a sufficiently close relationship with Defendant White such that Defendant White was acting under color of state law in depriving Plaintiffs of their substantive due process rights;

356.    Defendant Pritchard, Defendant Hardin, and Defendant Bright were acting in their direct and supervisory capacities in violating Plaintiffs' constitutional rights in that these Defendants directed their subordinates' conduct, had actual or constructive knowledge of their subordinates' conduct, or acquiesced to their subordinates' conduct;

357.    DSS', Defendant Pritchard's, Defendant Hardin's, and/or Defendant Bright's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of their subordinates' conduct, and, at a minimum, constituted negligent supervision;

358.    DSS, Defendant Pritchard, Defendant Hardin, and Defendant Bright failed and refused to comply with their statutory duties to supervise the other DSS employees, to protect the rights of Plaintiffs, and to prevent harm to Plaintiffs;

359.    Defendants' aforementioned conduct constitutes a violation of Plaintiffs' constitutional due process rights and, accordingly, a violation of 42 U.S.C. § 1983;

360.    Defendants' acts or omissions described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and were done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' protected constitutional rights, and shocks the conscience;

361.    Defendants acted in concert and joint action with each other;

362. Plaintiffs' fundamental right to make decisions concerning the care, custody, companionship, and control of her children and Plaintiffs' fundamental right to use their faculties to adopt, foster, and care for children, to earn a livelihood in the childcare field, and to pursue a career in the childcare profession are clearly established and laws of which reasonable persons would be aware; accordingly, Defendant Pritchard is not entitled to qualified immunity;

363. As a direct and proximate result of Defendants' acts or omissions, Plaintiff' constitutional rights have been deprived, and Plaintiffs have suffered actual financial and emotional damage, and other damages and losses as described herein entitling them to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

364. Plaintiffs have no adequate remedy at law, and unless enjoined by the Court, Defendants will continue to infringe upon Plaintiffs' constitutionally-protected rights and will continue to inflict irreparable injury;

365. This threat of injury to Plaintiffs from continuing violations requires preliminary and permanent injunctive relief;

366. The requested injunctive relief is necessary to prevent ongoing civil rights violations for which Plaintiffs are entitled to be compensated in monetary damages in an amount to be determined at trial;

## SECOND CAUSE OF ACTION
**(Violation of Article I § 19 of the North Carolina Constitution – The Law of the Land)**
**(As to all Defendants)**

367. Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

368.    Article I § 19 of the North Carolina Constitution reads in part, "No person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land. . . .";

369.    The expression "law of the land" has been held equivalent to the due process of law required by the Fourteenth Amendment to the Constitution of the United States;

370.    The North Carolina Constitution protects the fundamental right of parents to make decisions concerning the care, custody, companionship, and control of their children;

371.    The North Carolina Constitution also protects the fundamental right of individuals to use their faculties to adopt, foster, and care for children, to earn a livelihood in the childcare field, and to pursue a career in the childcare profession;

372.    DSS Defendants' conduct in substantiating Plaintiffs for child abuse and/or neglect, without any lawful basis and without any evidence, violated Plaintiffs' state constitutional rights;

373.    DSS Defendants' decision to substantiate Plaintiffs for child abuse and/or neglect constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' protected constitutional rights;

374.    As a direct and proximate result of DSS Defendants' acts or omissions, Plaintiffs have suffered actual financial and emotional damage, and other damages and losses as described herein entitling them to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

375.    Plaintiffs' have no adequate remedy at law, and unless enjoined by the Court, DSS Defendants will continue to infringe upon Plaintiffs' constitutionally-protected rights and will continue to inflict irreparable injury;

376. This threat of injury to Plaintiffs from continuing violations requires preliminary and permanent injunctive relief;

377. The requested injunctive relief is necessary to prevent ongoing civil rights violations for which Plaintiffs are entitled to be compensated in monetary damages in an amount to be determined at trial;

**THIRD CAUSE OF ACTION**
**(Negligence)**
**(As to all DSS Defendants)**

378. Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

379. DSS Defendants owed the following duties to Plaintiffs and to the Minor Children:

      a.      to investigate reports of abuse and neglect fairly and thoroughly;

      b.      to act appropriately based upon the results of the investigation;

      c.      to treat Plaintiffs fairly and equitably to ensure the protection of the rights and interests of the Minor Children and Plaintiffs;

      d.      to implement procedures to protect the individual rights and dignity of Plaintiffs and the Minor Children;

      e.      to provide an assessment response and counseling services to Plaintiffs and the Minor Children to help the Plaintiffs and the court prevent abuse or neglect, to help the Plaintiffs be more adequate parents or guardians, and to preserve family life;

f.    to act in accordance with DSS' mission, vision, values, and legal obligations
        in responding to the allegations against Plaintiffs and investigating the
        allegations against Plaintiffs;

g.    to protect the best interest of the Minor Children;

h.    to avoid any perceived conflict of interest and refer the investigation out to
        another county if a perceived conflict of interest existed;

i.    to provide Plaintiffs a written description of policies and procedures that they
        could follow to register complaints, information about Plaintiffs' rights, the
        process for appealing a decision or action of DSS, and the process of
        resolution of a complaint;

380.    DSS Defendants breached these duties by failing to fairly and thoroughly
investigate the allegations of child abuse and neglect, failing to act appropriately based upon the
results of the investigation, deliberately refusing to review and consider available relevant
evidence contradicting the allegations of child abuse and neglect, failing to avoid conflicts of
interests during their investigation and involvement, failing to refer the investigation out to
another county due to the perceived conflict of interests, failing to treat Plaintiffs fairly, failing to
ensure the protection of Plaintiffs' and the Minor Children's individual rights and dignity, failing
to preserve Plaintiffs'' and the Minor Children's family life, failing to act in accordance with
DSS' mission and legal obligations, failing to ensure that Plaintiff Leslie Kline received her
court ordered visitation with the Minor Children, substantiating the Plaintiffs for child abuse
and/or child neglect without any supporting evidence, failing to protect the best interests of the
Minor Children, failing to provide Plaintiffs with a description of policies and procedures to
follow to register complaints, failing to provide Plaintiffs with information on their rights, failing

to provide Plaintiffs with the process for appealing a decision of DSS, and failing to provide Plaintiffs with the process for resolving a complaint;

381.    Plaintiffs and the Minor Children have suffered damages as a result of DSS Defendants' breaches, specifically, a worsening of physical ailments, severe stress and anxiety, failure to obtain appropriate and necessary counseling services for the Minor Children and the family as a whole, inability to parent their Minor Children, character and reputation damage, humiliation and embarrassment, emotional damage, the inability to foster or adopt children in the future, damage to their family relationships, and other damages and losses as described herein entitling them to compensatory, special, and emotional damages in amounts to be determined at trial and injunctive relief;

382.    Plaintiffs' and the Minor Children's damages were foreseeable to DSS Defendants and were actually and proximately caused by DSS Defendants' acts and omissions;

383.    DSS Defendants' acts or omissions described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' rights;

**FOURTH CAUSE OF ACTION**
**(Negligent Supervision)**
**(As to Defendant County, Defendant Pritchard, Defendant Hardin, and Defendant Bright)**

384.    Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

385.    Defendant County, Defendant Pritchard, Defendant Hardin, and Defendant Bright had a duty to use reasonable care in supervising the conduct of employees to ensure statutes, policies, procedures, court orders, and other laws were properly followed;

386. Defendant County, Defendant Pritchard, Defendant Hardin, and Defendant Bright breached their duty in failing to ensure that the laws, statutes, policies, court orders, and procedures were followed;

387. Defendant County, Defendant Pritchard, Defendant Hardin, and Defendant Bright had actual or constructive knowledge that their subordinates Defendant Reece, Defendant Allen, and Defendant Lee were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injuries and other injuries to Plaintiffs;

388. Defendant County's, Defendant Pritchard's, Defendant Hardin's, and Defendant Bright's response to that knowledge was inadequate and showed a deliberate indifference to or tacit authorization of their subordinates' conduct;

389. Plaintiffs and the Minor Children have suffered damages as a result of Defendant County's, Defendant Pritchard's, Defendant Hardin's, and Defendant Bright's acts or omissions, specifically, a worsening of physical ailments, severe stress and anxiety, failure to obtain appropriate and necessary counseling services for the Minor Children and the family as a whole, inability to parent their Minor Children, character and reputation damage, humiliation and embarrassment, emotional damage, the inability to foster or adopt children in the future, damage to their family relationships, and other damages and losses as described herein entitling them to compensatory, special, and emotional damages in amounts to be determined at trial and injunctive relief;

390. Plaintiffs' and the Minor Children's damages were foreseeable to Defendant County, Defendant Pritchard, Defendant Hardin, and Defendant Bright and were actually and proximately caused by Defendant County's, Defendant Pritchard's, Defendant Hardin's, and Defendant Bright's acts or omissions;

391.    Defendant County's, Defendant Pritchard's, Defendant Hardin's, and Defendant Bright's acts or omissions described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' rights;

## FIFTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (As to all DSS Defendants)

392.    Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

393.    DSS Defendants engaged in negligent conduct by failing to conduct a thorough investigation of the child abuse allegations, ignoring available evidence contradicting the child abuse allegations, failing to follow proper policy and procedure for investigation of child abuse allegations, failing to follow proper policy and procedure for substantiating Plaintiffs for child neglect, failing to treat Plaintiffs fairly and equitably, failing to ensure the protection of Plaintiffs' rights, failing to follow court orders granting Plaintiff Leslie Kline visitation with the Minor Children, and failing to avoid conflicts of interests during the DSS investigation;

394.    As a direct and proximate result of DSS Defendants' acts or omissions, Plaintiffs have suffered severe emotional distress and severe anxiety for which they have received medical treatment and which resulted in worsening physical ailments and sleeplessness, actual financial and emotional damage, and other damages and losses as described herein entitling them to compensatory, special, and emotional damages in amounts to be determined at trial and injunctive relief;

395.    As DSS Defendants' conduct served to disrupt the family unit, exacerbate an already contentious custody dispute, and encourage the Minor Children to continue engaging in

lies and destructive acts, it was reasonably foreseeable that DSS Defendants' conduct would result in severe emotional distress to Plaintiffs;

396.    DSS Defendants' acts or omissions described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' rights;

## SIXTH CAUSE OF ACTION
### (Negligence Per Se)
### (As to all DSS Defendants)

397.    Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

398.    North Carolina General Statutes Chapter 7B and North Carolina Administrative Code are designed to protect the public;

399.    The Minor Children are members of the protected class that these statutes are designed to protect;

400.    DSS Defendants failed to follow the statutes and to exercise reasonable care in obeying the statutes;

401.    As a direct and proximate result of DSS Defendants' acts and omissions, the Minor Children have suffered damages, including without limitation not receiving appropriate counseling to correctly identify and address their emotional issues, the deterioration of family relationships, the deterioration of the Minor Children's relationships with Plaintiffs, and the Minor Children's best interests not being sustained, entitling the Minor Children to compensatory, special, and emotional damages in amounts to be determined at trial and injunctive relief;

402. DSS Defendants' acts or omissions described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of the Minor Children's rights;

**SEVENTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress)**
**(As to Defendant White)**

403. Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

404. Defendant White engaged in extreme and outrageous conduct described as follows:

a.  Protesting outside the Cleveland County Courthouse on or about November 14, 2018;

b.  Communicating confidential information about a juvenile DSS child abuse and neglect case to third parties;

c.  Acting as an aggressive and hostile parent toward the Minor Children and Plaintiff Leslie Kline;

d.  Alienating the Minor Children from Plaintiffs;

e.  Encouraging the Minor Children to lie;

f.  Deceiving and attempting to deceive the courts;

g.  Deliberately refusing to co-parent with Plaintiff Leslie Kline;

h.  Taking action aimed at undermining Plaintiff Leslie Kline's authority;

i.  Taking action aimed at damaging Plaintiff Leslie Kline's relationship with the Minor Children;

j.      Making false statements about Plaintiffs, specifically, that Plaintiffs committed child abuse and/or neglect, that there was evidence to support a finding against Plaintiffs for child abuse and/or child neglect, and/or that Plaintiffs were perpetrators of emotional abuse and improper discipline;

k.      Making false statements about Plaintiff Leslie Kline, specifically, that she has been diagnosed with obsessive compulsive disorder, that she has been diagnosed with borderline personality disorder, and that she received primary custody only due to Defendant White suffering from a stroke;

l.      Repeatedly willfully violating court orders requiring Defendant White to pay child support, requiring Defendant White to pay spousal support, requiring Defendant White to provide information pertaining to the Minor Children to Plaintiff Leslie Kline, and requiring that the Minor Children be in the custody of Plaintiff Leslie Kline during certain times;

m.      Between the dates of January 2017 through May 2017, retaining custody of B.A.W., to the exclusion of Plaintiff Leslie Kline, for approximately five months in violation of a court order dictating that B.A.W. should be in the custody of Plaintiff Leslie Kline;

n.      On or about December 17, 2018, leaving the counseling office with J.T.W. while Plaintiff Leslie Kline's back was turned, in violation of a court order;

o.      Between December 18, 2018 and February 20, 2019, failing to notify DSS and Plaintiff Leslie Kline upon receiving contact from one or both of the Minor Children while the Minor Children were missing;

p.     Between December 18, 2018 and February 20, 2019, failing to notify law enforcement or DJJ upon receiving contact from one or both of the Minor Children while the Minor Children were missing;

q.     In or about February 2019, alleging that he had notified law enforcement and DJJ upon receiving contact from one or both of the Minor Children while the Minor Children were missing, when in fact he did not do so;

r.     Making unfounded complaints against individuals who have represented Plaintiffs' interests or made rulings favorable to Plaintiffs, thereby attempting to dissuade legal professionals from assisting Plaintiffs or making fair and unbiased rulings;

s.     Making false statements under oath, thereby committing perjury, in an effort to harm one or both Plaintiffs, to obtain his desired custody ruling, to take custody away from Plaintiff Leslie Kline, to mislead the Court, to make his behavior appear more appropriate, and to mischaracterize the type of and/or extent of the Minor Children's emotional or psychological issues, including without limitation:

    i.    That on or about June 5, 2018, B.A.W. was completely submerged in the bathtub water, with the water covering his entire head;

    ii.   That on or about June 5, 2018, B.A.W.'s head was not submerged under the water;

    iii.  That, upon Defendant White receiving a telephone call from one or both of the Minor Children while they were missing during the time of December 18, 2018 and February 20, 2019, Defendant White informed

law enforcement and/or DJJ (specifically DJJ employee Shawn Collins) about his contact with the Minor Children;

    iv.  That, upon Defendant White receiving a telephone call from one or both of the Minor Children while they were missing during the time of December 18, 2018 and February 20, 2019, Defendant White did not inform law enforcement or Shawn Collins about his contact with the Minor Children;

    v.  That Defendant called Dr. Margaret Lee and left a voice message with her office in June of 2018;

405.    Defendant White's conduct was intended to cause Plaintiffs severe emotional distress;

406.    Defendant White's conduct did cause Plaintiffs severe emotional distress and severe anxiety for which they have received medical treatment, specifically, Plaintiffs have suffered from worsening physical ailments requiring increased medication and worsening physical ailments resulting in constant physical pain and sleeplessness;

407.    Defendant White's conduct described above was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' rights and safety;

408.    As a result of Defendant White's acts or omissions, Plaintiffs have suffered actual financial and emotional damage, and other damages and losses as described herein entitling them to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

**EIGHTH CAUSE OF ACTION**
**(Defamation – Slander Per Se and Libel Per Se)**
**(As to all Defendants)**

409.     Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

410.     Beginning on or about June 13, 2018 and continuing through February 22, 2019, including without limitation the following specific dates – June 13, 2018, June 18, 2018, June 20, 2018, July 3, 2018, July 24, 2018, July 25, 2018, November 14, 2018, and December 7, 2018 - Defendants stated, printed, caused to be stated, and/or caused to be printed, false statements about Plaintiffs, specifically, that Plaintiffs committed child abuse and/or neglect, that there was evidence to support a finding against Plaintiffs for child abuse and/or neglect, and that Plaintiffs were perpetrators of emotional abuse and improper discipline toward the Minor Children;

411.     These statements are untrue;

412.     These false statements are obviously defamatory as the commission of child abuse or neglect is a crime under the laws of North Carolina and the laws of the United States and would subject Plaintiffs to ridicule, contempt, shame, and disgrace;

413.     These false statements specifically referred to Plaintiffs and were published to several third parties other than the Plaintiffs, including without limitation Defendant White, the Minor Children, Gaston County Department of Social Services employees, medical professionals, counselors, therapists, Tenneka Dennard, Ashtin Biochea, Yolanda Hall-Asbell, Department of Juvenile Justice employees, the Minor Children's school personnel, all individuals within eyeshot and earshot of the Cleveland County courthouse on November 14, 2018, the Shelby Star employees, the Shelby Star online newspaper, anyone who read, saw, or heard the Shelby Star online article and photographs, among others;

414.     At the time of the publication, Defendants either knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false or acted with utter indifference to the truthfulness of the statements;

415.     DSS Defendants and Defendant Pritchard had actual or constructive knowledge of the risk of injury to Plaintiffs caused by the defamatory statements and their response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the defamatory statements against Plaintiffs, permitted the defamatory statements against Plaintiffs, and, at a minimum, constituted negligent supervision;

416.     DSS Defendants, Defendant Pritchard, Defendant Hardin, and Defendant Bright failed and refused to comply with their statutory duties to supervise the other DSS employees, to protect the rights of Plaintiffs, and to prevent harm to Plaintiffs;

417.     Defendants' conduct described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' rights and safety;

418.     As a result of Defendants' acts or omissions, Plaintiffs have suffered actual financial and emotional damage, including humiliation, shame, embarrassment, disgrace, damage to their reputations, and other damages and losses as described herein entitling them to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

**NINTH CAUSE OF ACTION**
**(Defamation – Slander Per Se)**
**(As to Defendant White)**

419.     Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

420.    On or about December 10, 2018, Defendant White told medical personnel at CaroMont Health that Plaintiff Leslie Kline was being investigated by Lincoln County for child neglect, that Plaintiff Jeffery Kline was being investigated by Lincoln County for child abuse, and that Plaintiff Leslie Kline had been diagnosed with borderline personality disorder and obsessive-compulsive disorder;

421.    On or about December 11, 2018, Defendant White told medical personnel at Old Vineyard Behavioral Health Services that Plaintiff Leslie Kline had been diagnosed with borderline personality disorder and obsessive-compulsive disorder;

422.    These statements are untrue;

423.    These false statements specifically referred to Plaintiffs;

424.    The false statements that Plaintiffs were being investigated by Lincoln County for child abuse and child neglect and that Plaintiff Leslie Kline had been diagnosed with borderline personality disorder and obsessive compulsive disorder are obviously defamatory as the commission of child abuse or neglect is a crime under the laws of North Carolina and the laws of the United States and would subject Plaintiffs to ridicule, contempt, shame, and disgrace, and a mental illness diagnosis would subject Plaintiff Leslie Kline to ridicule, contempt, shame, and disgrace;

425.    At the time of the publication, Defendant White either knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false or acted with utter indifference to the truthfulness of the statements;

426.    Defendant White's conduct described above constitutes arbitrary and capricious conduct, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff Leslie Kline's rights and safety;

427. As a result of Defendant White's acts or omissions, Plaintiff Leslie Kline has suffered actual financial and emotional damage, including humiliation, shame, embarrassment, disgrace, damage to her reputations, and other damages and losses as described herein entitling her to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

### TENTH CAUSE OF ACTION
**(Defamation - Slander Per Quod)**
**(As to Defendant White)**

428. Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

429. On or about December 10, 2018, Defendant White told medical personnel at CaroMont Health that he lost custody of the Minor Children and youngest child due to having a stroke;

430. On or about September 22, 2017, Defendant White told John Adriatico that Plaintiff Leslie Kline was on food stamps and that the Minor Children and youngest child were on Medicaid despite Defendant Kline's ability to pay for insurance;

431. These statements are untrue;

432. These statements, when considered with innuendo, colloquium, and explanatory facts tended to impeach Plaintiff Leslie Kline's character, parenting skills, honesty, and ability to provide for her children;

433. These statements were of and concerning Plaintiff Leslie Kline and were published to third parties;

434. At the time of the publication, Defendant White either knew the statements were false or failed to exercise ordinary care in order to determine whether the statements were false or acted with utter indifference to the truthfulness of the statements;

435. Defendant White's conduct described above constitutes arbitrary and capricious conduct, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff Leslie Kline's rights and safety;

436. As a result of Defendant White's acts or omissions, Plaintiff Leslie Kline has suffered actual financial and emotional damage, including humiliation, shame, embarrassment, disgrace, damage to her reputation, and other damages and losses as described herein entitling her to compensatory, special, and punitive damages, specific amounts to be determined at trial and injunctive relief;

## ELEVENTH CAUSE OF ACTION
### (Abuse of Process)
### (As to all DSS Defendants)

437. Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

438. DSS Defendants failed to follow North Carolina law, DSS policy and North Carolina regulations in the investigation of the allegations against Plaintiffs;

439. DSS Defendants misused the child protection laws and process for ulterior purposes;

440. DSS Defendants substantiated Plaintiffs for child abuse and/or child neglect and deemed Plaintiffs perpetrators of emotional abuse and improper discipline without any lawful basis;

441.     DSS Defendants' conduct described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' protected constitutional rights;

442.     As a result of DSS Defendants' acts or omissions, Plaintiffs have suffered actual financial and emotional damage, and other damages and losses as described herein entitling them to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

<h2 style="text-align:center">TWELFTH CAUSE OF ACTION<br>(Civil Conspiracy)<br>(As to all Defendants)</h2>

443.     Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

444.     Between the approximate dates of June 4, 2018 and July 25, 2018, DSS Defendants and Defendant White agreed with each other to do the following unlawful acts:

    a.    Substantiating Plaintiffs for child abuse and/or child neglect without any evidence;

    b.    Defaming Plaintiffs by communicating the false statements that they committed child abuse and/or child neglect, that there was evidence to support a finding against Plaintiffs of child abuse or neglect, that Plaintiffs were perpetrators of emotional abuse and improper discipline to third parties;

    c.    Violating court orders providing for child custody and visitation;

    d.    Allowing conflicts of interest to permeate the DSS investigation;

e.   Allowing Defendant White to make independent decisions regarding counseling during the DSS investigation, without Plaintiffs' knowledge or consent;

445.   Defendants engaged in the above described conduct as part of a common scheme;

446.   As a result of Defendants' acts or omissions described above, Plaintiffs have suffered actual financial and emotional damage, and other damages and losses as described herein entitling them to compensatory, special, and punitive damages in amounts to be determined at trial and injunctive relief;

447.   Defendants' conduct described above constitutes arbitrary and capricious conduct, a gross abuse of government authority, and was done willfully, maliciously, in bad faith, and in reckless disregard of Plaintiffs' rights;

### THIRTEENTH CAUSE OF ACTION
**(Preliminary and Permanent Injunction)**
**(As to all Defendants)**

448.   Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

449.   Pursuant to Rule 65, Federal Rule of Civil Procedure, Plaintiffs are entitled to a preliminary and permanent injunction ordering the following:

a.   Restraining and enjoining Defendants and certain third parties, including Karin White, Myra Willis, Bill Willis, Yolanda Hall-Asbell, Amia Briscoe, all DSS employees whether or not named in this Complaint, all North Carolina Department of Health and Human Services employees, and all DJJ employees, from destroying or concealing documents and records;

b.      Defendants shall take steps to ensure that any information relating to the DSS case, DJJ case, and the custody case involving Plaintiffs and the Minor Children on any website, blog, social media, publication, or YouTube is no longer viewable or accessible by persons using the internet;

c.      Defendants and certain third parties to include Karin White, Myra Willis, Bill Willis, Yolanda Hall-Asbell, Amia Briscoe, all DSS employees whether or not named in this Complaint, all North Carolina Department of Health and Human Services employees, and all DJJ employees shall be prevented from altering, destroying, and erasing any Internet content relating to the DSS case, DJJ case, or custody case posted by or on behalf of Defendants or by or on behalf of the Minor Children;

d.      Defendants shall remove all electronic media relating to the child abuse/neglect allegations against Plaintiffs and the DSS substantiation against Plaintiffs;

e.      Defendants shall pay the Shelby Star to remove the online article and associated photographs addressing the substantiation against Plaintiffs and, at the conclusion of this case, to publish an appropriate retraction;

f.      An injunction against further distribution or publication of any material, in any form, by any Defendants, DSS employees, and NCDHHS employees of the substantiation against Plaintiffs for child neglect and/or child abuse;

g.      At the conclusion of this case and not before, DSS Defendants shall destroy and expunge any record that relates to, references, suggests, or implies that Plaintiffs committed child abuse or child neglect, that Plaintiffs were

substantiated for child abuse or child neglect, and that Plaintiffs were perpetrators of emotional abuse and improper discipline;

h.     At the conclusion of this case, DSS Defendants shall reverse or retract the substantiation against Plaintiffs;

i.     DSS Defendants shall submit the substantiation reversal/retraction to any and all entities and individuals who previously received notification of the DSS substantiation against Plaintiffs;

j.     Defendants shall refrain from publishing information about this case and about the DSS case, including without limitation verbal communication, written communication, and electronic communication, to all parties not named in the caption of this Complaint;

k.     Defendants shall refrain from publishing the DSS substantiation against Plaintiffs, including without limitation verbal communication, written communication, and electronic communication, to all parties not named in the caption of this Complaint;

l.     Restraining and enjoining Defendant White, his agent, his spouse, and/or his attorney(s) from depositing, transferring, distributing, and/or spending his ownership interest(s) in any property, real or personal, or company, entity, corporation, or LLC, and enjoining Defendant White, his agent, his spouse, and/or his attorney(s), from depleting or reducing the value of Defendant White's interest(s) in any property, real or personal, or company, entity, corporation, or LLC, pending further order of this Court;

450.    Plaintiffs verified Complaint and Exhibits demonstrate a substantial likelihood of prevailing on the merits of this action;

451.    An injunction is necessary and appropriate to redress the ongoing, foreseeable, actual, and irreparable harm to Plaintiffs as a result of a violation of their constitutional and other rights;

452.    Monetary damages alone at a later time will not adequately protect Plaintiffs from the damages they are sustaining or will sustain if an injunction is not granted;

453.    Plaintiffs' continue to be damaged by the published information about the DSS case, the DSS substantiation, and the custody dispute;

454.    The balance of equities between the parties support an injunction as an injunction will serve to mitigate Plaintiffs' injuries, an injunction will not result in any harm to Defendants, and an injunction will not serve to destroy any evidence;

455.    The preliminary and permanent injunction sought by Plaintiffs will not harm the public interest;

## FOURTEENTH CAUSE OF ACTION
### (Prejudgment Attachment)
### (As to Defendant White)

456.    Plaintiffs reallege and incorporate the allegations in all prior paragraphs of this Complaint;

457.    Pursuant to Rule 64, Federal Rule of Civil Procedure, and N.C.G.S. § 1-440, Plaintiffs are entitled to a Court Order of prejudgment attachment on Defendant White's property, both real and personal, thereby enjoining Defendant White, his agent, his spouse, and/or his attorney(s) from depositing, transferring, distributing, and/or spending his ownership interest(s) in any property, real or personal, or company, entity, corporation, or LLC and

enjoining Defendant White, his agent, his spouse, and/or his attorney(s), from depleting or reducing the value of Defendant White's interest(s) in any property, real or personal, or company, entity, corporation, or LLC, pending further order of this Court;

458. N.C.G.S. § 1-440.3 allows for prejudgment attachment when the defendant is a person who, with intent to defraud his creditors, has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property;

459. Throughout Plaintiffs' and Defendant White's domestic case, Defendant White has repeatedly violated court orders requiring him to pay child support and spousal support and has hidden and failed to disclose assets to avoid paying child support and spousal support (Exhibit 12);

460. Cleveland County District Court Judge Reeves found that Defendant White, during a child support hearing on February 18, 2014, intentionally failed to disclose certain monies accessible to him and that he was "being blatantly deceptive to the Court" (Exhibit 12);

461. Judge Reeves also found that Defendant White "testified that [Defendant White] and his wife, Karin, plan to open a separate joint account to make things easier. The Court finds this is to continue to attempt to hide his assets" (Exhibit 12);

462. Judge Reeves also found that Defendant White's former spouse testified that, during Plaintiffs' and Defendant White's domestic case, Defendant White "had monies deposited solely into [Defendant White's former spouse's] bank account that had her sole name on the bank account. That [Defendant White] was working but did not get payroll checks in his name, instead he received cash at times. Other times Black Rock Cattle Company wrote checks directly in [Defendant White's former spouse's] name at the direction of [Defendant White] for the work that [Defendant White] had completed and [Defendant White's former spouse] would

cash those checks and/or place the checks into [Defendant White's former spouse's] checking account . . . .  That [Defendant White] said he was doing this to pay less child support or none" (Exhibit 12);

463.    Defendant White has also declared bankruptcy on at least one occasion;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court for the following relief:

1.    That the Court assume jurisdiction over this action;

2.    Accept this verified Complaint as an affidavit in support of Plaintiffs' claims, including the requests for preliminary and permanent injunction and prejudgment attachment;

3.    Enter judgment in favor of Plaintiffs on all causes of action in this Complaint, holding all Defendants jointly and severally liable in their official and individual capacities for all compensatory damages, special damages in an amount of at least $90,000.00, incidental damages, consequential damages, emotional damages, and punitive damages, in specified amounts to be determined at trial, as to all claims asserted in this Complaint, together with pre-judgment and post-judgment interest, costs, expenses, and reasonable attorney fees;

4.    A preliminary and permanent injunction providing the relief requested in the Thirteenth Cause of Action;

5.    Prejudgment attachment on Defendant White's property providing the relief requested in the Fourteenth Cause of Action;

6.    A judgment declaring the substantiation against Plaintiffs void;

7.    An award of reasonable attorneys' fees, expert witness fees, costs and other expenditures incurred as a result of bringing this action and enforcing the injunctive relief, pursuant to 42 U.S.C. § 1988 and other applicable laws;

8.      A trial by jury;

9.      Such other and further relief as to the Court seems just and proper.

## **<u>JURY TRIAL DEMAND</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the U.S. Constitution, Plaintiffs hereby request a trial by jury as to all issues so triable in this action.

Respectfully submitted,

This 27th day of August, 2019.

The Law Office of Rebecca McNerney PLLC

<u>*By: /s/ Rebecca McNerney*</u>
Rebecca T. McNerney
Attorney for Plaintiffs
NC Bar # 42296
7401 Carmel Executive Park
Suite 215
Charlotte, North Carolina 28226
Phone: (704) 492-7866
Email: rebecca@rebeccamcnerneylaw.com

# VERIFICATION

We, Leslie Kline and Jeffery Kline, being first duly sworn, depose and say that we are the Plaintiffs in this matter, that we have read and understand this AMENDED COMPLAINT and know the contents to be true of our own personal knowledge, except for those matters and things set forth upon information and belief, and as to those matters and things, we believe them to be true.

_____
Leslie Kline, Plaintiff

_____
Jeffery Kline, Plaintiff


STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

On this 23 day of _Aug_____, 2019, Leslie Kline and Jeffery Kline personally appeared before me, and being duly sworn, acknowledged that they signed the foregoing document voluntarily for the purposes stated therein.

_____
Notary Public of North Carolina

My Commission expires: July 29 2024

```
HEATHER MEDFORD
Notary Public
Cleveland Co., North Carolina
My Commission Expires July 29, 2024
```